PEATTIE v. GABEL et al.

(Supreme Court, Appellate Division, Fourth Department. March 5, 1913.)

1. GUARDIAN AND WARD (§ 1*)—EXISTENCE OF RELATIONSHIP—SUFFICIENCY OF EVIDENCE.

　　Evidence *held* not to show that the person under whom plaintiff claimed land was the guardian of an infant when he received a sheriff's deed, so that his possession of the property was held as a guardian.

　　[Ed. Note.—For other cases, see Guardian and Ward, Cent. Dig. § 1; Dec. Dig. § 1.*]

---

**2. ADVERSE POSSESSION (§ 115*)—EVIDENCE—QUESTION FOR JURY.**

Evidence *held* to make it a jury question whether the person under whom plaintiff claimed receipted for rents for property in controversy as agent or as principal, so as to entitle him in the latter case to claim by adverse possession.

[Ed. Note.—For other cases, see Adverse Possession, Cent. Dig. §§ 314, 691–701; Dec. Dig. § 115.*]

**3. EVIDENCE (§ 273*)—DECLARATIONS AND OWNERSHIP.**

While declarations of one claiming title are not admissible to prove title, where the question is as to the nature of the claim of one in possession, his declarations as to the nature of his possession are admissible as verbal acts serving to give an adverse color to his possession, so that evidence of declarations by one in possession of property that he was receiving rents therefrom under his tax title was admissible on the question of his adverse possession.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 1108–1120; Dec. Dig. § 273.*]

**4. JUDGMENT (§ 570*)—CONCLUSIVENESS.**

An unreversed judgment dismissing the complaint on the merits is conclusive of the issues involved therein.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. §§ 1028–1034, 1036–1040, 1042–1045, 1165; Dec. Dig. § 570.*]

Appeal from Trial Term, Oneida County.

Action by William H. Peattie against Edward Gabel and Helen L. Gabel, impleaded with Eliza Miller. From a judgment in part for plaintiff and in part for defendant Helen L. Gabel, and from an order amending the complaint to conform to the proof, and from an order denying a motion of each appealing defendant for a new trial, defendants Gabel appeal. Affirmed.

The premises in controversy are located in the city of Utica, and are known as No. 73 Broadway, being a lot 50 feet in width and 120 feet in depth, on which stands a dwelling house. At the commencement of the action, which is in ejectment, in January, 1911, the defendant Edward Gabel was in possession of the premises, and had been since about March 17, 1908, claiming title under deeds given upon sale of the premises for certain unpaid city and county taxes. Plaintiff claimed title and a right to possession under a deed dated December 24, 1907, and recorded March 19, 1908, from the committee of Daniel Waterman, an incompetent, as to an undivided four-fifths of the premises, and under a deed from the Home for Aged Men and Couples, dated March 17, 1908, as to an undivided one-fifth of the premises. Defendant Helen L. Gabel, who is a sister of the defendant Edward Gabel, claimed title to at least an undivided four-fifths of the premises through deeds to her made in 1908, 1909, and 1910 from the heirs at law of Sophia Waterman, deceased, and from a daughter and the heirs of certain deceased children of James Lackey, deceased, who prior to his death intestate, in about the year 1872, was concededly the owner of these premises. The following is a history of the title as disclosed by the record:

James Lackey, the admitted owner, died intestate about 1872, leaving his widow and five children, James Lackey, Jr., Helen Lackey, Sarah Lackey, Sophia Lackey, and Frances Lackey, who continued to occupy the premises until the death of the widow, about 1877 or 1878. During this time, and on October 24, 1873, James Lackey, Jr., conveyed the undivided one-fifth part which he inherited from his father to the First National Bank of Utica. On March 23, 1874, a judgment was recovered in favor of John O. Jones and others against Helen Lackey for $45.94, which became a lien upon her undivided one-fifth, and on August 27, 1874, Helen Lackey made a mortgage upon her interest to Daniel Waterman, Agent, for $182.64. On October 6,

1876, Helen Lackey's interest was sold on execution under the Jones judgment, and on January 8, 1878, Daniel Waterman, having redeemed from this execution sale by virtue of his mortgage, received a deed of Helen Lackey's one-fifth interest from the sheriff, and on March 26, 1879, Waterman conveyed this interest to his sister, Sophia Waterman, whose agent he was in making the loan and taking the mortgage from Helen Lackey, and the title to this undivided one-fifth part of Helen Lackey remained vested in Sophia Waterman until her death, intestate, about 1909, and by deed dated April 6, 1910, this interest was conveyed to the defendant Helen L. Gabel by the heirs at law of Sophia Waterman, and. this is the one-fifth interest of which the jury, by their verdict, have found the defendant Helen·L. Gabel, to be now the owner in fee.

On September 12, 1881, the whole premises were conveyed to Daniel Waterman by the county treasurer of Oneida county by virtue of a previous tax sale to one Richardson, who, before the deed was made, assigned the certificate of sale to said Waterman. The tax which was the foundation of this tax sale and deed was one assessed upon the property as being owned by the "estate of James Lackey," and for this reason, as we infer, the assessment and the tax title founded thereon was held at the trial to be invalid; but plaintiff's claim at the trial was that Daniel Waterman took possession under this deed, and maintained an adverse possession for more than 20 years, and the jury has so found, and it is for that reason that plaintiff has been adjudged to be the owner of an undivided four-fifths of these premises as the grantee of Daniel Waterman.

Plaintiff has, however, another source of title as to an undivided one-fifth, being part of the undivided four-fifths as to which he has been adjudged to be the owner. This one-fifth is the share inherited by James Lackey, Jr., which he conveyed to the First National Bank of Utica. After the tax sale to Richardson, some time prior to 1881, and after the deed under this tax sale to Daniel Waterman of September 12, 1881, Waterman, by deed dated Sep-tember 8, 1881, but acknowledged December 28, 1881, and recorded November 19, 1890, conveyed to the First National Bank of Utica an undivided one-fifth part of the premises; the effect of this deed being to again vest in the First National Bank of Utica the share which had been previously conveyed to it by James Lackey, Jr.—it being assumed, we infer, that the bank had lost its title to this share because of the deed of the whole premises under the tax sale to Daniel Waterman. The First National Bank of Utica held title to this one-fifth share until March 10, 1908, when it conveyed the same to the Home for Aged Men and Couples. and on March 17, 1908, the Home for Aged Men and Couples conveyed this share to the plaintiff. Because of these deeds it was held at the trial as matter of law that plaintiff was the owner in fee of this undivided one-fifth interest, and that the validity of his title did not depend upon the sufficiency of Waterman's title by adverse possession.

The defendant Miller is a tenant in possession under the defendant Edward Gabel, and claims no title.

Argued before McLENNAN, P. J., and KRUSE, ROBSON, FOOTE, and LAMBERT, JJ.

C. E. Snyder, of Herkimer, for appellant Helen L. Gabel.

A. B. Steele, of Herkimer, for appellant Edward Gabel.

W. F. Dowling, of Utica, for respondent.

FOOTE, J. One of the principal questions of fact litigated upon the trial and submitted to the jury was whether Daniel Waterman had maintained an adverse possession of the property since the tax deed to him on September 12, 1881, or shortly thereafter. The learned trial judge held that, if Daniel Waterman had maintained adverse possession of the premises for more than 20 years, then plaintiff had good title and a right to recover possession. Without reviewing the

evidence in detail, we think it was sufficient prima facie to justify and require the trial court to submit the question to the jury as one of fact as to whether Daniel Waterman took possession of the premises as early as 1883 under and by virtue of his tax deed, and maintained such possession openly and adversely to the Lackey heirs until December 24, 1907, when his title was conveyed to plaintiff by committee of his property; he having previously been adjudged to be an incompetent person. No evidence of possession in any other person during this period was given. The property was assessed to Waterman as owner during the greater part of this period, and the title claimed by the defendant Edward Gabel is under such assessments, and the defendants Gabel recognized and asserted Waterman's title in proceedings to perfect title and acquire possession, to which proceedings we will refer later. It is sufficient to say upon this branch of the case that we consider the evidence sufficient to require the submission to the jury of the question of Daniel Waterman's adverse possession for more than 20 years, and that the verdict of the jury upon that question in favor of the plaintiff ought not to be disturbed as against the weight of the evidence.

It has been found by the jury, in effect, that Waterman's possession was not adverse as against his sister Sophia Waterman, to whom he had conveyed on March 26, 1879, the one-fifth interest inherited by Helen Lackey from her father; and, as plaintiff has not appealed, we need not consider the grounds upon which the jury reached that conclusion. The one-fifth interest inherited by James Lackey, Jr., from his father, has been vested in plaintiff by deeds conveying the fee, which do not depend for their validity upon Daniel Waterman's title by adverse possession; hence, if Waterman's title by adverse possession was good as to the remaining undivided three-fifths, it is sufficient to support the judgment.

But the appellants contend that Waterman's possession has been improperly treated as adverse because: (1) He was a guardian for Helen Lackey, and his possession may be properly referred to his relation to the property as such guardian. (2) He gave some receipts for rent, which he signed "Daniel Waterman, Agent," which should indicate that he was collecting the rents as agent, and not as principal, and that the possession was that of his principal, and not of himself. And these questions present the principal grounds of error urged upon this appeal.

[1] In the deed from the sheriff to Daniel Waterman, made January 8, 1878, of the one-fifth share of Helen Lackey, made on Waterman's redemption from the sheriff's sale of this share on execution on the Jones judgment, there is this recital:

"Whereas, Daniel Waterman, guardian of the said Helen Lackey, having in his own name a mortgage executed and delivered to him by said Helen Lackey before the expiration of 15 months from the time of such sale, which was a lien and charge upon the premises sold, hath acquired all right of the said purchasers to said premises within the time and in the manner and form prescribed by the statute," etc.

This recital contains the only evidence appearing in the record that Waterman was ever guardian for Helen Lackey. Helen Lackey,

though living, was not a witness upon the trial, and the evidence did not disclose her age, or that she was an infant at that time. It did not appear that the judgment under which her interest was sold upon execution was recovered against her as an infant, and the mortgage executed by Helen Lackey to Daniel Waterman on August 27, 1874, does not appear to have been executed by her as an infant by virtue of any proceeding to mortgage an infant's real property. We think the recital in the sheriff's deed is not, under the circumstances, sufficient as evidence to show that Waterman was, in fact, guardian for Helen Lackey. The evidence of the judgment and the mortgage tend rather to show that in 1874 Helen Lackey was not an infant; but if the recital mentioned may be regarded as evidence, against Waterman and those claiming under him, that he was at one time guardian for Helen Lackey, or even at the date of that deed, January 8, 1878, as such guardianship would cease upon her becoming of age, there is no basis in the evidence for assuming that she remained an infant at the time Waterman received his tax deed in September, 1881. But if it be assumed that Waterman was guardian for Helen at and after the time he received his tax deed in 1881, still that fact would not prove or raise the presumption that his possession was as guardian. Helen's share, as to which alone his guardianship could relate, had passed both from Helen and himself to his sister Sophia Waterman by his deed to her of March 26, 1879. This title of Sophia Waterman has been found by the jury to be good, and to be now vested in defendant Helen L. Gabel. Daniel Waterman's possession, therefore, subsequent to September, 1881, could not have been as guardian for Helen Lackey; for she had no remaining interest in the premises.

As to the rent receipts, signed "Daniel Waterman, Agent," Williams, the tenant, and his widow, after his death, took receipts from Waterman for the rent they paid from 1894 to 1908. The rent was payable monthly. These receipts were preserved in possession of Mrs. Williams. Defendant Edward Gabel, a short time before the trial, was permitted to examine these receipts, and to take such as he wished for his use, for a money consideration paid to Mrs. Williams. He selected and put in evidence only seven out of the whole number. The first was dated December 18, 1896, one was made in 1897, one in 1898, three in 1899, and one in 1900. The jury might properly infer that all the other receipts over this long period were signed by Waterman, without adding the word "Agent." It appeared that Daniel Waterman, who was a lawyer, was also an insurance agent, and also collected the pew rents for his church, and that in these capacities he was in the habit of signing receipts for moneys collected as agent. It was the claim of plaintiff's counsel that Waterman, through inadvertence in these few instances, added "Agent" to his signature, being led to make such mistake because of his habit so to do in giving insurance and pew rent receipts.

Other explanations are suggested, arising out of the ownership during this period of a one-fifth interest in these premises by the First National Bank of Utica and another one-fifth by Sophia Waterman. We think the form of these receipts, in and of themselves, does not

conclusively establish that Waterman was not at the time claiming title in himself, and occupying by his tenants as owner, exclusive of any other right, and that the effect to be given those receipts was for the jury, in connection with the other evidence in the case on the question of Waterman's adverse possession. The learned trial judge was clearly right in refusing to instruct the jury that, if they were satisfied that Daniel Waterman gave the receipts for rent, describing himself as agent, plaintiff could not recover.

In this connection the fact should not be overlooked that to sustain the verdict of the jury on this appeal, in so far as it rests upon a title in Daniel Waterman acquired by adverse possession, we do not need to look in the record for evidence to show such adverse possession, except as to the undivided three-fifths inherited by the Lackey heirs from their father, other than the one-fifth of Helen Lackey and the one-fifth of James Lackey, Jr. As to these two shares the title does not depend upon Daniel Waterman's adverse possession, and the jury has by this verdict in effect found that Waterman did not hold or claim to hold the premises adversely to his sister Sophia and the First National Bank of Utica, owners, respectively, of these two shares.

[2] The jury were, we think, properly instructed that they might find Waterman's possession to have been adverse as to some of the tenants in common and not as to all. The jury may have found Waterman to have acted as agent as to two-fifths of the premises for his sister and the First National Bank, and still find, as they have done, that as to the owners of the other three-fifths his possession was adverse.

[3] Appellants urge as a further ground of error the receipt, over their objection, of the testimony of the witness Benjamin Waterman, brother of Daniel Waterman, the latter having died before the trial, as to statements and declarations made to him by Daniel Waterman. These declarations were made by Daniel Waterman in the winter of 1883 or 1884, at the home of Benjamin Waterman, and hence not upon or near the premises in question. This testimony was to the effect that Daniel Waterman, in a conversation with his brother Benjamin as to certain investments of money at tax sales in the city of Utica, in which Daniel advised against such investments, said:

"That he had bought a lot on Broadway, and he also mentioned its being right in the rear of the church where he attended, Westminster Church, and he said he got his money out of that by renting. It was good rent."

The property referred to in this statement is the property in question here. Appellants contend that this statement of Daniel Waterman was improperly received in evidence, because: (1) It was not made on the premises; (2) it was a self-serving declaration of the party in his own interest; (3) not made in the hearing of any of the other parties; and (4) not brought to the attention of any of the other parties.

There is no doubt of the rule that declarations of a party claiming title are not receivable in evidence to establish or prove his title; but the rule seems to be equally well settled that, where the question at issue is as to the nature of the title or right of a party in possession

and the claim under which he holds possession, the declarations of the party are receivable, not to prove his ownership, but "as verbal parts of his act of occupation serving to give it an adverse color." See Wigmore on Evidence, vol. 3, § 1778, where this rule is stated, and the authorities in support of it collated.

In considering this question, Prof. Greenleaf, in his work on Evidence (16th Ed., vol. 1, § 108), says:

"Again, the occupation of land is, merely as a physical act, capable of various interpretations, and may need to be completed by words in order to have legal significance. 'What a man says when he does a thing shows the nature of his act, and is a part of the act.' * * * The typical case is that of conduct to which it is desired to attach legal significance, but in which there is intrinsically none, until its whole tenor is otherwise made definite; and it is by words accompanying the conduct that this tenor is more fully and precisely defined. The words are not used testimonially; for example, where it is asked whether A.'s possession is adverse—i. e., under claim of ownership—his utterance, 'This land is mine, for I bought it of B.,' is not used as evidence that it is his and that he did buy it of B., but merely as giving to his occupation an adverse complexion and significance."

In the early case of Jackson v. Vredenbergh, 1 Johns. 159, it was held that similar declarations "were clearly evidence, namely, to show in what character, or with what intent, she entered and held possession of the premises in dispute." See, also, Abeel v. Van Gelder, 36 N. Y. 513; Morss v. Salisbury, 48 N. Y. 636; People v. Holmes, 166 N. Y. 540, 60 N. E. 249; Dibble v. Cole, 102 App. Div. 229, 92 N. Y. Supp. 938; Gilmartin v. Buchanan, 134 App. Div. 587, 119 N. Y. Supp. 489.

We conclude that there was no error in admitting the testimony as to Daniel Waterman's declarations to the effect that he was receiving the rents of these premises by virtue of his tax title. This declaration explained his possession, and proof of his possession did not rest solely upon this declaration. There was other evidence showing that he was in receipt of the rents at that time.

We have considered the other grounds of error urged by the learned counsel for Helen L. Gabel, but we find nothing in any of them which requires, or in our opinion would justify, a reversal of the judgment.

The learned counsel for the defendant Edward Gabel urges that title to the premises is shown in him by the several tax deeds received by him, or some of them, and contends that the trial court should have so held as matter of law.

The first tax deed referred to was made October 24, 1902, by the county treasurer of Oneida county. Shortly after this deed was made by the county treasurer to Edward Gabel, he conveyed an undivided one-half to his sister, Helen L. Gabel, and they began a proceeding in the County Court of Oneida county against Daniel Waterman's tenant, Louis Williams, to recover possession of the premises from Williams. Williams defended, asserting Waterman's title, and his right of possession thereunder, and an adjudication was made dismissing the proceedings, on the ground, among others, that the statutory notice to redeem under the tax sale had not been served upon the own-

er or occupant. An opinion was written by the county judge, and the case is reported under the title of Edward Gabel and Helen L. Gabel v. Louis Williams and George Scott, 39 Misc. Rep. 489, 80 N. Y. Supp. 489.

Appellants question the effect of this adjudication, for the reason that during the progress of the case the parties, by their attorneys, stipulated that one George Scott was a mortgagee of these premises and that no notice to redeem had been given him, when the fact was that George Scott was a fictitious person and there was no such mortgage. The purpose of this stipulation was to get an adjudication in the case as to the necessity of giving notice to redeem to the mortgagee in such cases. The testimony shows that defendant Edward Gabel was aware of the stipulation, and that it was made for his benefit and guidance in perfecting other tax titles. It may well be that if adjudication against the validity of this deed in this proceeding was based wholly upon failure to give notice to redeem to the fictitious mortgagee, its validity could not be upheld; but we see no ground for relieving the defendants Edward Gabel and Helen L. Gabel from the conclusive effect of the adjudication upon the other ground stated in the decision, namely, that no notice to redeem had been given to the owner or occupant.

As bearing upon the issue of Daniel Waterman's title by adverse possession, it is to be noticed that the agreed statement of facts signed by counsel for the respective parties in this proceeding was before the jury, and that it contained a statement:

"That Daniel Waterman is, and has been since 1881, the owner of a certain house and premises known as 73 Broadway, in the city of Utica, Oneida county, N. Y.; that thereafter he leased said premises to Louis Williams, one of the defendants herein, who is and has been for several years last past in possession of said premises."

The next tax deed under which defendant Edward Gabel claims title is from the city treasurer of the city of Utica, and bears date July 15, 1904. On July 20, 1904, defendant Edward Gabel began a summary proceeding before the county judge of Oneida county to recover possession of these premises from the tenant, Louis Williams, by virtue of this deed. The same was defended by Williams, and tried upon the merits, and the proceeding dismissed and Gabel's title determined to be invalid, on the ground, among other things, that Gabel had failed to serve sufficient notices to redeem as required by the statute. An opinion was written by the county judge in which the questions involved are elaborately considered. While this proceeding was pending, the defendant Louis Williams died, and his widow, Anna E. Williams, was substituted as a defendant. Defendant Gabel appealed from this decision to this court, where the decision was affirmed. See Edward Gabel v. Anna E. Williams, 105 App. Div. 625, 93 N. Y. Supp. 1132. During the hearing of this case, while Edward Gabel was on the witness stand, the following stipulation was made in open court:

"It is stipulated that Daniel Waterman is, and has been since 1881, the owner of the house and premises, No. 73 Broadway, Utica, N. Y., the prem-

ises in question, with the exception of the claim of the petitioner's title; that the defendant Louis Williams is occupying said premises under a lease from Daniel Waterman."

The next tax deed upon which the defendant Edward Gabel relies is from the city treasurer of the city of Utica, dated October 27, 1905. This deed was adjudged void by the special county judge of Oneida county on June 4, 1906, in a summary proceeding brought by Edward Gabel against Anna E. Williams as tenant in possession, on the ground that no sufficient notice to redeem had been served upon the owner or occupant, and on the further ground that the city treasurer had added to the amount of the tax and expenses and interest required to be paid to redeem the premises an overcharge of $3.60.

[4] In July, 1907, defendant Edward Gabel began an action in ejectment in the Supreme Court against Chester W. Davis, as committee of the person and estate of Daniel Waterman, and Anna E. Williams, to recover possession of these premises by virtue of certain tax titles, and among others the deed of October 27, 1905. Daniel Waterman had some time before this been adjudged incompetent, and Davis appointed his committee. The action was defended, both on the ground of the invalidity of Gabel's tax titles and the previous adjudications in respect thereto. The case was brought to trial, and judgment rendered October 14, 1908, dismissing the plaintiff's complaint upon the merits. This judgment counsel for Edward Gabel urges is not conclusive as an adjudication, because it appears from the minutes of the trial that a nonsuit was granted at the close of plaintiff's case. We think, while the judgment stands unmodified or unreversed in its present form, dismissing the complaint upon the merits, it must be given that effect here.

These are all the tax deeds upon which the defendant Edward Gabel contends here that he should have been permitted to succeed at the trial. We think he is concluded by the several adjudications referred to. No question was submitted to the jury in respect to these several deeds, nor was any request made that any question should be so submitted.

We do not consider it necessary to refer here to any of the other questions urged upon this appeal as a ground for a reversal of the judgment below. We find none of them which, in our opinion, require a reversal. The case was submitted to the jury by the learned trial judge in a very clear and comprehensive charge, and we find no error sufficient to justify a reversal of this judgment in any of his rulings upon the questions of law.

Defendants have also appealed from an order, made after the verdict was rendered, directing the amendment of the pleadings to conform to the proofs and to the verdict as rendered. While in our opinion no amendment of the pleadings was necessary, we think defendants are not prejudiced by the order sufficiently to justify a reversal.

The judgment and orders appealed from must, we think, be affirmed, with costs. All concur.