ETHELINE H. HINKLEY, Appellant, *v.* STATE OF NEW YORK, Respondent.

**Real property — adverse possession — title to lands under navigable waters of the Hudson river cannot be acquired by riparian owner by adverse possession.**

1. Adverse possession must be exclusive, under no permission or license or favor upon the part of the owner; the claim must be under color of independent title, exclusive of any right derived from the

actual owner. To establish title by adverse possession, it must be shown that the person holding the possession did so in open hostility to the rights of the true owner. The presumption is that the possession is in subordination to the actual title.

2. When the entry upon land has been by permission or under some right or authority derived from the owner, adverse possession does not commence until such permission or authority has been repudiated and renounced and the possessor thereafter has assumed the attitude of hostility to any right in the real owner. Occupation must not only be hostile in its inception, but it must continue hostile, and at all times, during the required period of years, challenge the right of the true owner in order to found title by adverse possession upon it. The entry must be strictly adverse to the title of the rightful owner, for if the first possession is by permission it is presumed to so continue until the contrary appears.

3. Where an upland owner enters upon land under navigable water, having no title thereto, for the purpose of erecting piers, wharves or filling in for bulkhead and wharf purposes, under the implied permission of the state, his user does not become adverse merely by the erection of a building thereon. Something more must have been done, or claimed, to make this lawful entry adverse as against the state.

4. Where an upland owner in 1835 and thereafter, as well as his successors in title, had the right to wharf or pier out to the navigable part of the Hudson river, they could build piers which would rest upon the land under water, or they could build wharves and erect bulkheads. They also could fill in marshy ground and erect a substantial wharf for the use of navigation and commerce connected with their business. All these things could be done under the implied permission of the State by reason of the law pertaining to upland owners, *i. e.*, the law of riparian rights. The user of the riparian owner may have been excessive and-it may be that he had no right to fill in the land and build thereon a malthouse or manufacturing plant, as distinguished from structures connected with navigation, but this abuse of his privilege could not of itself make the use adverse. An adjacent owner cannot acquire title to land under water by filling it up.

*Hinkley* v. *State of New York*, 202 App. Div. 570, affirmed.

(Argued October 19, 1922; decided November 28, 1922.)

APPEAL from a judgment, entered August 1, 1922, upon an order of the Appellate Division of the Supreme

Court in the third judicial department reversing a judgment in favor of plaintiff entered upon an award of the Court of Claims and directing a dismissal of the claim.

*Frank B. Lown* for appellant. Property rights may be acquired as against the People of the State of New York through the filling and occupation of ungranted lands under navigable waters for a period of more than forty years. (Civ. Pr. Act, § 31; *People* v. *Clarke,* 9 N. Y. 349; *People* v. *Van Rensselaer,* 9 N. Y. 291; *Deshong* v. *City of New York,* 176 N. Y. 475; *Barnes* v. *Midland Co.,* 218 N. Y. 9; *Town of Brookhaven* v. *Smith,* 188 N. Y. 74; *Matter of City of New York,* 217 N. Y. 1; *United States* v. *Nashville,* 118 U. S. 120; *Utah Co.* v. *United States,* 243 U. S. 390; *Fulton L., H. & P. Co.* v. *State,* 200 N. Y. 400.)

*Charles D. Newton, Attorney-General* (*Anson Getman* of counsel), for respondent. There was and could be only one ground on which the Court of Claims could make an award for the lands in question shown on map T-192, viz., fee ownership. (*People ex rel. Palmer* v. *Travis,* 223 N. Y. 150; *People ex rel. Smith* v. *Sohmer,* 163 App. Div. 830; 215 N. Y. 709.) Claimant, appellant, was not the fee owner. The lands in question were formerly under the navigable waters of the Hudson river. The state is, therefore, presumed to have title. The burden of proving title by a grant or patent is on the one claiming title. No such proof was offered. (*People ex rel. Underhill* v. *Saxton,* 15 App. Div. 263; 154 N. Y. 748; *N. Y. C. R. R. Co.* v. *B. B. Co.,* 10 App. Div. 387; 158 N. Y. 470; *Utah Co.* v. *United States,* 243 U. S. 389; *People ex rel. Blakslee* v. *Com.,* 135 N. Y. 447, 450; *Tiffany* v. *Town of Oyster Bay,* 234 N. Y. 15, 21; *Matter of McClellan,* 146 App. Div. 594, 598; 204 N. Y. 677.) Claimant, appellant, did not have title by adverse possession and had no prescriptive right. (*People* v. *Van*

*Rensselaer*, 9 N. Y. 291; *People* v. *Clarke*, 9 N. Y. 349; *Tarpey* v. *Madsen*, 178 U. S. 215; *People* v. *N. Y. & S. I. Ferry Co.*, 68 N. Y. 71; *Knickerbocker Ice Co.* v. *Shultz*, 116 N. Y. 382; *Slingerland* v. *I. C. Co.*, 169 N. Y. 60, 72; *Saunders* v. *N. Y. C. R. R. Co.*, 144 N. Y. 85; *Coxe* v. *State*, 144 N. Y. 396; *People* v. *D. & H. Co.*, 75 Misc. Rep. 322; 154 App. Div. 909; 213 N. Y. 194; *Bedell* v. *Shaw*, 59 N. Y. 46; *Ramapo. Mfg. Co.* v. *Mapes*, 216 N. Y. 262.)   The filling of the lands in question did 'not add to claimant, appellant's, rights therein. · (*People ex rel. Blakslee* v. *Comrs.*, 135 N. Y. 447; *Saunders* v. *R. R. Co.*, 144 N. Y. 75; *Sage* v. *Mayor, etc.*, 154 N. Y. 61; *Archibald* v. *N. Y. C. & H. R. R. R. Co.*, 157 N. Y. 574; *Nevins* v. *Friedauer*, 198 App. Div. 250.)

CRANE, J.   Chapter 555 of the Laws of 1918 provides for the construction of a barge canal terminal at Pough-keepsie, New York, and for the entry upon and acquisition of land needed for the site.   The title states the purpose to be " with a view of improving the commerce of the state, and making an appropriation therefor."

Part of the land selected has been the subject of this litigation before the Court of Claims.   It consists of property purchased on the water front of the Hudson river in 1818 by Matthew Vassar.   Part of the land is upland, and the rest, as it exists to-day, is filled-in land. For the land under water, with the exception of that known as parcel T 192 (appropriation map), patents were granted by the state.   Parcel T 192, which is in question, consists of land bulkheaded and filled in, about 0.615· acres.   How early this land, for which there was no patent, was filled in is not definitely known, but it must have been done shortly after the acquisition of the property by Vassar.   It appears as filled-in land, docked and bulk-headed, on a map of the incorporated village of Pough-keepsie, dated September, 1834.

Vassar was a brewer, and on this filled-in land was

erected a malt house and other buildings. To the north and to the south of parcel T 192 the land under water has been filled in under grants from the state to the respective upland owners. The water front along all of this property has been well bulkheaded and presents a straight and even frontage. The entire land appropriated, therefore, consists of upland and filled-in land, one parcel on the water front having been filled in without authority from the state, other than that which the law may give to riparian owners. For this parcel in question there could be found no grant or patent.

The property which the state has sought to appropriate for the barge canal terminal, including the parcel in question, T 192, was owned or claimed at the time of this proceeding by Etheline H. Hinkley, who received it through mesne conveyances from Matthew Vassar.

The state and the owner entered into negotiations for the purchase of this property, the state offering for the whole tract the sum of $35,000. On examination of the title it was for the first time discovered by the parties that no water grant for parcel T 192 could be found. This, as before stated, was land under water filled in level with the upland. Negotiations were entered into between the state, the city of Poughkeepsie and Mrs. Hinkley, which need not here be referred to at length, and which resulted in Mrs. Hinkley transferring to the state of New York all the upland which she owned at this point, together with the filled-in land for which there had been patents granted, reserving under stipulation parcel T 192, appropriation map, for submission to the Court of Claims. Mrs. Hinkley claimed the fee of this parcel by reason of adverse possession for a period of seventy or eighty years. The state claimed that she had no title, and that, in the interest of navigation, the state could take it without compensation for the barge canal terminal.

In accordance with the stipulation Mrs. Hinkley submitted her claim known as claim No. 16,427 to the Court

of Claims on the 15th day of October, 1920, in which she stated her rights to be as follows: " The claimant was at the time of the appropriation the sole owner in fee of the premises appropriated. The plaintiff claims a good and sufficient title to the lands appropriated by and through an uninterrupted adverse possession of the same by her and her preceding grantors for over fifty years before the date of said appropriation and before the filing of her said claim in this court. The plaintiff further claims and alleges that neither the said claimant herein or her preceding grantors, during a period of at least fifty years before said appropriation, or at any time prior thereto, paid any rentals or profits for the use or occupation of the premises so appropriated to the state of New York or to any of its officers or authorities."

By the stipulation of submission previously signed by Mrs. Hinkley it was expressly understood that for the parcel in question she would receive a sum not to exceed $5,000 as the value of her right, interest or estate in the property.

The Court of Claims found for the claimant in the sum of $5,000, holding that she had established her title by adverse possession. The Appellate Division reversed this award and dismissed the case. The finding of fact that the possession of Mrs. Hinkley and her predecessors in title had been exclusive and adverse to any claim of title on the part of the people of the state of New York was set aside. It is necessary for us, therefore, to determine from the record whether there be any evidence of adverse possession tending to establish title as against the state.

The situation presented is this: An upland owner has certain riparian rights in the Hudson river. In the exercise of those rights he bulkheads and fills in the land under water using the made land as a dock and for the erection of buildings thereon. This possession and use continues for nearly seventy-five years without any interference or

claim of authority by the state. No grant or patent has been given to the upland owner for the lands under water which he has filled in. What are the rights of the respective parties?

Section 31 of the Civil Practice Act (L. 1920, ch. 925), formerly section 362 of the Code of Civil Procedure, provides:

" § 31. When the people will not sue. The people of the state will not sue a person for or with respect to real property, or the issues or profits thereof, by reason of the right or title of the people to the same, unless either:

" 1. The cause of action accrued within forty years before the action is commenced; or

" 2. The people, or those from whom they claim, have received the rents and profits of the real property or of some part thereof, within the same period of time."

It may be that there is a distinction in the class of property owned by the state, and that there can be no adverse possession whatever as against the property which the state holds in trust for the public, as distinguished from such property as it may hold in a private or proprietary character. No time, for instance, can run against the state as to property which it could not grant to private individuals, such as forest lands set aside for a park (*People* v. *Baldwin*, 197 App. Div. 285; affd., 233 N. Y. 672), or as to canal property, for in *Donahue* v. *State of New York* (112 N. Y. 145) the law is stated to be as follows: " Upon the trial it was conceded that no highway had ever been laid out at that point, and we think a legal dedication of the land as a public highway cannot be inferred. It could not be inferred on the theory of prescription, because that would depend upon a supposed grant, and a grant cannot be presumed where it would have been unlawful (*Burbank* v. *Fay*, 65 N. Y. 57). The land in question was the property of the state, and, as such, was appropriated for the use described as a feeder to the canal, and never could have become the subject

of any grant for the purpose of a public highway." (See, also, *Slingerland* v. *International C. Co.*, 169 N. Y. 60, 72.)

Whether title can be gained by adverse possession as to lands under water which the state could have granted by patent we need not now decide as in our opinion the evidence does not justify the conclusion that the possession of Mrs. Hinkley and her predecessors back to Matthew Vassar has been adverse.

Adverse possession must be exclusive, under no permission or license or favor upon the part of the owner; the claim must be under color of independent title, exclusive of any right derived from the actual owner.

" To establish title by adverse possession, it must be shown that the person holding the possession did so in open hostility to the rights of the true owner. The presumption is that the possession is in subordination to the actual title. (*Doherty* v. *Matsell*, 119 N. Y. 646.) It is not sufficient that he has merely held the possession undisturbed for the period of twenty years. The fact that the plaintiffs and their predecessor in title were in the undisturbed possession of the land for twenty years and upwards, does not show that the possession was adverse. It does not necessarily follow therefrom that their entry was under the deed mentioned, exclusive of any other right, and this was essential to constitute an adverse holding under a written conveyance, which would divest the title of the true owner after twenty years." (*Heller* v. *Cohen*, 154 N. Y. 299, 311.) (See, also, *Ramapo Mfg. Co.* v. *Mapes*, 216 N. Y. 362; *Belotti* v. *Bickhardt*, 228 N. Y. 296.)

When the entry upon land has been by permission or under some right or authority derived from the owner, adverse possession does not commence until such permission or authority has been repudiated and renounced and the possessor thereafter has assumed the attitude of hostility to any right in the real owner. " Occupation must not only be hostile in its *inception*, but it must

continue hostile, and at all times, during the required
period of twenty years, challenge the right of the true
owner in order to found title by adverse possession upon
it. The *entry* must be strictly adverse to the title of the
rightful owner, *for if the first possession is by permission it
is presumed to so continue until the contrary appears.* If
the occupation begins with the recognition of the real
owner's estate it is presumed to be subservient, and that
the one making the entry intends to hold honestly and
not tortiously. The character of the possession depends
on the intention with which entry is made and occupation
continued. There is no disseisin until there is occupation
with intention to claim title, and the fact of entry and
the *quo animo* fix the character of the possession. The
burden of proving all the facts necessary to constitute
adverse possession is upon the one who asserts it, for in
the absence of such proof possession is presumed to be in
subordination to the true title." (*Lewis* v. *New York &
Harlem R. R. Co.*, 162 N. Y. 202, 220.)

Excessive use or violation of the right or privilege
granted by the owner cannot create adverse possession
until it amounts to a claim openly distinct from any
claim of ownership on the part of the original proprietor.

" The object of the statute defining the acts essential
to constitute an adverse possession is that the real owner
may, by unequivocal acts of the usurper, have notice of
the hostile claim and be thereby called upon to assert
his legal title." (*Monnot* v. *Murphy*, 207 N. Y. 240,
245.) (See, also, *Culver* v. *Rhodes*, 87 N. Y. 348; *Flora* v.
*Carbean*, 38 N. Y. 111.)

Matthew Vassar as riparian owner had certain rights
which involved the land under water. These were given
to him by law and may be considered as a permission or
license from the people of the state of New York. The
right of a riparian owner was fully considered in *Town of
Brookhaven* v. *Smith* (188 N. Y. 74, 84) and in *Thousand
Island Steamboat Co.* v. *Visger* (179 N. Y. 206). He has the

right of access to the channel or the navigable part of the river for navigation, fishing and such other uses as commonly belong to riparian ownership, the right to make a landing wharf or pier, for his own use, or for that of the public, with the right of passage to and from the same with reasonable safety and convenience. A pier may be constructed without a grant from the state of the land under water upon which it rests. In this country it has generally been held that the upland owner has the right of constructing a proper pier, or landing, for the use of himself and the public, subject to the general regulations prescribed by the state or the United States. What form or shape or size the pier may take varies with use and necessity. The upland owner has no right to fill in the land under water for purposes foreign to commerce and navigation. (*Barnes* v. *Midland R. R. Terminal Co.,* 193 N. Y. 378.)

Vassar, the upland owner, in 1835 and thereafter, as well as his successors in title, had the right to wharf or pier out to the navigable part of the Hudson river. They could build piers which would rest upon the land under water, or they could build wharves and erect bulkheads. They also could fill in marshy ground and erect a substantial wharf for the use of navigation and commerce connected with their business. (*People* v. *Mould,* 37 App. Div. 35.) All these things could be done under the implied permission of the people of the state of New York by reason of the law pertaining to upland owners, *i. e.,* the law of riparian rights. When Vassar built his pier or bulkheaded and erected his wharf he did not act adversely to the interests or title of the people of the state of New York, but acted under a right given to him by the people through the law. His user may have been excessive. It may be that he had no right to fill in this land and build thereon a malt house or manufacturing plant, as distinguished from structures connected with navigation, but this abuse of his privilege could not of itself make

the use adverse.    What was the state to do?    There are many miles of water front upon the waterways of the state of New York.    The upland owners have, as above stated, the right to build wharves and piers for use in navigation.    Such user is not adverse.    Must the state keep a body of paid employees to constantly inspect all its water ways to see that riparian rights are not pushed beyond lawful limitations and the occupation ripen into adverse possession?    Such a demand upon the resources of the state would be unreasonable.    " Who is to watch," said the court in *Jersey City* v. *Hall* (79 N. J. L. 559, 574), " so as to detect within a certain period all encroachments upon the innumerable public highways in the state, or who is to keep similar guard over all parts of its extensive harbors and navigable rivers? "

An adjacent owner cannot acquire title to land under water by filling it up.    (*Saunders* v. *N. Y. C. & H. R. R. R. Co.*, 144 N. Y. 75, 84; *Knickerbocker Ice Co.* v. *Shultz*, 116 N. Y. 382, 387; *Williams* v. *Mayor, etc., of N. Y.*, 105 N. Y. 419, 431; *Danes* v. *State of New York*, 219 N. Y. 67; *State* v. *Venice of America Land Co.*, 160 Mich. 680.)

There may be circumstances which would justify the running of the Statute of Limitations against the state, and we refrain from holding that in no instance can title be acquired by adverse possession where the state in the first instance could have made a grant of the land to private individuals.    (*Matter of City of New York*, 217 N. Y. 1, 13; 2 Corpus Juris, p. 214, note 38 B.)    The cases referred to by Judge CULLEN in *Fulton Light, H. & P. Co.* v. *State of New York* (200 N. Y. 400, 422) are cases where the state had no right at any time to make a grant of the property or privilege claimed.    We leave that question open.    We do hold, however, that where, as in this case, an upland owner enters upon the land under water for the purpose of erecting piers, wharves or filling in for bulkhead and wharf purposes, his user does not

become adverse merely by the erection of a building thereon. Something more must have been done or claimed to make this lawful entry adverse as against the state.

It has been said that a riparian owner has rights which cannot be taken without compensation, except for the improvement of navigation. Generally speaking the state may so improve the water front as to aid navigation for the benefit of the general public without compensation to the riparian owners. (*Sage* v. *Mayor, etc., of N. Y.*, 154 N. Y. 61.) Whether the state, however, could actually appropriate land under water, destroying riparian rights for the purpose of a barge canal terminal without making compensation is not before us for decision. The claimant alleged title in fee and presented the case upon this theory. There was no attempt made to prove the value of the riparian rights or the value of the fill.

The judgment appealed from should be affirmed, with costs.

HOGAN, CARDOZO, POUND and McLAUGHLIN, JJ., concur; ANDREWS, J., concurs in result; HISCOCK, Ch. J., not voting.

Judgment affirmed.