GEORGE R. TAYLOR, Plaintiff, *v.* CLAUDE W. GOODENOUGH, Defendant.

Fourth Department, March 21, 1934.

*O. Gregory Burns,* for the plaintiff.
*Pirnie Pritchard,* for the defendant.

SEARS, P. J.  The submission calls for the determination of the marketability of the title to certain real estate which the plaintiff has agreed to sell and convey to the defendant and the defendant to purchase.  The plaintiff and his predecessors have been in possession and occupancy of the property since 1791.  The first possessor and occupant was David Hawkins, whose possession continued from 1791 to 1845.  The only question which we are called upon to answer is whether the failure of the plaintiff to show record title in David Hawkins renders the title to the premises unmarketable.

It appears that there was recorded in the Oneida county clerk's office, in which county the land is situated, on March 19, 1921, an instrument executed and acknowledged by Abraham Wemple running to David Hawkins.  The instrument leases the premises involved in this action and contains an habendum clause as follows: " To have and to hold, the premises aforesaid, with all and singular the appurtenances thereunto belonging unto the said party of the 2nd part, his executors, administrators and assigns, from the day before the date hereof, for and during the term of one whole year, from thence ensuing, and fully to be complete and ended; yielding and paying therefor, the rent of one pepper corn, on the last day of the term only if the same be demanded; To the intent, that by virtue of these presents, and by force of the laws for transferring of uses into possession, the said party of the 2nd part, may be in the actual possession of the premises, and thereby enabled to take a grant and release of the reversion and inheritance thereof, to him the said David Hawkins, his heirs and assigns forever."

The argument against the marketability of the title is founded upon the contention that David Hawkins' possession was based upon the lease and that Hawkins having entered by permission of the owner, his occupancy and that of his successors were at all times subservient to the Wemple title and not adverse.  Therefore, it is argued the plaintiff's title is unmarketable.  The general rule is to the effect that where entry upon land has been by permission of the owner or under some right or authority derived from him, adverse possession does not commence to run until the permission or authority has been clearly repudiated by the occupant.  (*Hinkley* v. *State of New York*, 234 N. Y. 309; *Miller* v. *Warren*, 94 App. Div. 192; affd., 182 N. Y. 539; *Bradt* v. *Church*, 110 id. 537.)

There are two sufficient answers to the defendant's contention of unmarketability.

The application of the general rule is, in the case of a landlord and tenant, limited by statute.  The presumption of continuance of the original relation is limited to a period of fifteen years following

the termination of the tenancy, or where there has been no written lease to a period of fifteen years following the last payment of rent. (Civ. Prac. Act, § 41, as amd. by Laws of 1932, chap. 265, derived from Code Civ. Proc. § 373, and originally revised from Code Proc. § 86.) The written lease, if it is to be deemed a lease in the ordinary sense, expired on the 24th day of January, 1792. That was the termination of the tenancy by the written lease. Since then, if there existed a tenancy, it was not under a written lease nor, judging from the terms of the writing already referred to, could any rent have been paid, for the rent was but one pepper corn payable only if demanded on the last day of the term. We deem the lease at best to have spent its force more than a hundred years ago. The existence of the lease in view of the statute does not affect adversely the plaintiff's title which is not otherwise questioned.

The other answer relates to the form of the lease itself. It is manifestly not such an instrument as is current in these later days. At the time of the American Revolution, however, and for some years afterwards, a much used form of conveyance of real property in this State was a lease and a release. (2 Blackstone, 339; 4 Kent [14th ed.], 494.) " The lease and release, when used as a conveyance of the fee," says Kent, " have the joint operation of a single conveyance. The first step was to create a small estate, as a lease for a year, and vest possession of it in the grantee. * * * To avoid the necessity of actual entry, the lesser estate was created by a bargain and sale under the statute of uses, and founded on a nominal pecuniary consideration. The bargain raised the use, and the statute immediately annexed the possession to the use; and the lessee, being thus in possession by the operation of the statute, was enabled to receive a release of the reversion. The release was a conveyance at common law, and operated by way of enlargement of the estate; and thus, by the operation of the lease, by way of bargain and sale, under the statute of uses, and by the operation of the release at common law, the title was conveyed." It is further stated in the Commentaries that this was the usual mode of conveyance in England down to the year 1841, and that it was the mode universally in practice in New York until the year 1788 when a statutory enactment removed the apprehension of the necessity of the enrollment of deeds of bargain and sale, and left that " short, plain and excellent " mode of conveyance to its free operation. The consequence was, it is there further stated, that the conveyance by lease and release, which required two deeds instead of one, fell immediately into total disuse and will never be revived. Internal evidence of the lease in question here, however, shows its use in 1791. A note in Kent's Commentaries is as follows: " The second

volume of Mr. Preston's Treatise on Conveyancing is essentially devoted to the theory of the law, as it applies to the conveyance by lease and release; and the subject is exhausted, and treated in attenuated detail." A comparison of the form of lease with the classical form given by Preston in his second volume, page 251, described in the second volume, page 369, shows convincingly that the lease involved in this case was not a lease in the ordinary form but was one of the two instruments together making up an ancient form of conveyance. The intent to create an estate or possession so as to form the basis for a release is stated in definite terms in the instrument itself and when we add to this the occupancy of Hawkins and his continuation in possession for more than fifty years we feel warranted in concluding that the occupancy of David Hawkins was not under the lease subject to the postponed rent of a pepper corn never paid, but was in fact the possession of a title under a complete conveyance of lease and release. " Presumptions are indulged either in favor of, or in opposition to, ancient deeds, according to the matters *in pais* which accompany them." (*Hasbrouck* v. *Burhans*, 42 Hun, 376; *Clark* v. *Owens*, 18 N. Y. 434. Cf. 1 Wigm. Ev. § 112.)

We, therefore, determine that the failure of the plaintiff to show record title in David Hawkins otherwise than by the lease referred to does not render the title of the premises unmarketable, and judgment should be granted to the effect that the defendant perform the agreement and accept the deed tendered, pay the plaintiff the sum of $950, and execute his bond secured by mortgage, without costs.

All concur.

Submitted controversy determined in favor of the plaintiff, without costs.