Bergan, J.
The 1930 tax assessment of wild forest land in the Town of Olive in Ulster County on which defendant George’s tax deed is based is erroneous in several respects, including *243 both compass directions of boundary lines and the quantity of land assessed.
Yet the singular physical location of the assessed land in the Town of Olive bounded on the west side by the official public line of the Town of Denning and coming to a point in its northwest corner touching the southeast point of the official town lines of Shandaken, afford assurance that the essential statutory test of sufficiency of description has been met.
In addressing itself to errors in assessments, the statute provides that an error or omission “ shall not prevent ” the enforcement of the tax 1 ‘ if the parcel can be identified and located with reasonable certainty ” (Real Property Tax Law, § 504, subd. 4; Tax Law, former § 55-a).
Defendant George purchased the tax liens on the property at a sale in 1931 based on the assessment of 1930 and in 1933 received a tax deed from the Ulster County Treasurer. Plaintiff’s predecessors paid no taxes on the land after 1929 and 34 years later, in 1963, plaintiff bought their interests for $600. Defendant Shultis is a contract purchaser from George. After a trial the court at Special Term held the tax deed was good. The Appellate Division, taking a different view, reversed.
In large measure the Special Term’s determination was based on the references in the assessment to the public lines of the towns which led that court to ‘1 the comfortable conclusion ’ ’ that the land described in the assessment could “ only be ” that of plaintiff’s predecessors.
This evaluation seems consistent with the weight of evidence and if it is right to say that the land in the assessment could “ only be ” the land in dispute, it would fully comply with the requirement of the statute that the parcel described ‘1 can be identified ” with “ reasonable certainty ”.
That the description here was sufficient to advise the record owner Jacob B. Hardenburgh and his heirs what property was . being assessed is also suggested by the fact that from 1921 on, the property was described as in the 1930 assessment and that at least for some of those years Hardenburgh or his heirs paid the tax based on this assessment (McDonogh v. Smith, 277 App. Div. 1087).
There are some early cases in this court which construed assessment roll descriptions with extreme rigor against tax *244 authorities. An example of this is Glason v. Baldwin (152 N. Y. 204) where Judge 0 ’Brisk noted that 81 the title of the owner could not be divested without a strict compliance with all the provisions of the statute ” (p. 210). See, also, in this direction Tallman v. White, (2 N. Y. 66) and Zink v. McManus (121 N. Y. 259).
Yet the modern view is stated in Judge Cardozq’s opinion in McCoun v. Pierpont (232 N. Y. 66) which, indeed, expresses the spirit of the statute. There was in that case a failure of the assessors to carry down on the assessment description the name of the subdivision to which the numbered lots in question belonged, the name being shown only at the top of the page and not placed on the lower lines relating to the specific lots sold; and there was a failure to show the number of the map to which reference was made, it appearing on the record as a blank.
Quoting the statute (now in the language of Beal Property Tax Law, § 504, subd. 4) Judge Cardojzo noted: “ That is the •standard to be applied to-day. If support for one less liberal may be found in early cases, the authority of the cases yields to the mandate of the statute ” (p. 69). He added the significant comment: “ The verdict of common sense in such a situation is the verdict also of the law. That verdict, we think, must be that misconception is impossible ” (p. 70).
The language in which assessors can put land descriptions, and the actual range and possibility of accurate actual description are quite as infinite as the locations and lines of different land. It is difficult to attribute precedential value to cases which hold one description good enough to advise the owner that his land is assessed, and to cases which hold another description not good enough. For this purpose Kiamesha Development Corp. v. Guild Props. (4 N Y 2d 378) and Hunt v. Dekin (298 N. Y. 575), holding descriptions insufficient, might be compared with McCoun v. Pierpont (supra) and People v. Patenaude (286 App. Div. 140) where the challenged descriptions were held sufficient.
The maps reproduced in both plaintiff’s and defendants’ briefs show, as it has been noted, that the land is located at a point where the Town of Olive is bounded by the Town of Denning and also touches a corner point of the boundary between Shandaken and Olive.
*245 It is argued by defendants, and plaintiff does not overcome this, that nowhere else in the Town of Olive than this precise spot could the town lines of Denning and Olive form a boundary of any land in Olive which would also touch the Town of Shandaken. Thus, although the compass directions on the description in the assessment of the land in question “ S-Denning, W-Shandaken” are literally wrong, the ability of the owner, or any interested person, to identify and locate the land with reasonable certainty seems manifest.
The holdings of plaintiff’s predecessor Hardenburgh greatly exceeded the immediate 260-acre parcel which is here in dispute. These holdings extended beyond the Town of Olive and totaled 694 acres. But the assessors in Olive were concerned only with the land within that town and it is clear that Hardenburgh’s holdings in Olive were so located as to be at the point in that town where the town lines of Shandaken, Denning and Olive come together. The only land assessed to Hardenburgh in Olive in 1930 was land in the precise location of the town of which the parcel in dispute was a part.
The literal description on the assessment roll and the tax deed in question was: “65 Acres, more or less, described as Located at West Shokan. Bounded North by Watson, East by the Highway, South by the Town of Denning, West by the Town of Shandaken, against which the words ‘ Hardenburgh, J. B.’ appear on the assessment roll of the Town of Olive for the year 1930.”
The Appellate Division’s reversal rested on its view that 11 Obviously the description here involved is patently erroneous ”. But most of the cases which arise in this field of law are beset by more or less patent errors; and the critical question is not that there are errors, but whether the land can be identified with reasonable certainty notwithstanding the errors.
There is an error in the number of acres in the assessment, of which the disputed parcel here in question was a part. The larger parcel had been assessed to Hardenburgh from 1882 to 1905 by the Town of Olive as 622 acres; in 1906 it was assessed as 625 acres and this was continued each year until 1925 when *246 it was assesed at what seems to be 65 acres with a blurred third digit after the “65” for the years 1925 and 1926.
3m 1927, starting a new page on the assessment sheet,, it was marked 65 acres and1 this was continued on through 1930 and is stated this way in the tax deed. This is an obvious clerical error. No change in the description and no change in the value is noted when the “ 625 ” is changed to “ 65 ”. The value continues at $400 from 1907 through 1930 and later (with the exception of 1908 when it is $440). The transposition of the 5 of the 625 in the 1924 assesment to the second digit in 1925 and 1926 with the last digit blurred obviously led to the error on the next page. Hardenburgh paid the tax in 1929 after this error in acreage had been made.
It has been observed1 that the town line of Denning is an accurate west line of the parcel here in dispute, the 260-acre lot which was a part of the larger parcel (694 acres) owned by Hardenburgh and lying partly in the Towns of Olive and Denning. Hardenburgh also owned, by prior acquisition, land in Olive to the east of the 260-acre parcel which additional holding appears on the map as C. S. Quillard. The “Watson farm” bounds this on the east. A road roughly bounds this whole grouping on the south. Since the assessors were describing only Hardenburgh’s land in Olive, and since it included land east of the land here involved and bordering on Watson’s farm, it was sufficiently accurate to show “ Watson ” as one boundary on the description.
The lines thus laid out on the east bounded a total parcel much larger than the 260-acre lot in dispute here, but that total parcel manifestly included the 260-acre lot. Thus the acreage of the total of which the lot in dispute was a part was sufficiently accurate for the purpose of the statute. The west line closely approximated the Town of Denning line; the northwest corner touched a corner of the Town of Shandaken line and the highway and “Watson” formed the other boundaries. It is not possible to see how the owner or any interested person could have difficulty in identifying or locating the assessed land. Therefore, the tax deed should be held good.
The court at Special Term determined also that George had title by adverse possession. From the time of acquiring title and *247 for a period of oyer 30 years George regularly paid the taxes on the land. This wild forest land is located about eight miles from Mr. George’s home.
Mr. George testified ‘ ‘ I used it for recreation, recreation principally, for hunting for myself and members of my family who wished to hunt and also friends of mine. I also used it for the growing of timber and on that property there were some chestnut, material that is scarce in other woods, chestnut timber was destroyed by the blight in the Catskills about 55 years ago. There is some chestnut on the property and I took advantage of that chestnut and used it on the property I owned at Sundown where I had no timber, all I had were shade trees, a few fruit trees and shrubbery and I used stakes and fruit ties that I cut up there in connection with my Sundown property.”
•The possession of the land by George was asserted in reliance on a written instrument, the tax deed from the town based on the description which has been discussed. This sufficiently meets the statutory test to qualify under subdivision 3 of section 512 of the Real Property Actions and Proceedings Law, which, as to one “ claiming a title ’’which is u founded on ” a written instrument, provides that land is possessed where, not enclosed, “ it has been used for the supply of fuel or of fencing timber, either for the purposes of husbandry or for the ordinary use of the occupant.”
The Special Term found “ the land was used for ordinary use of the occupant ’ ’. The Appellate Division opinion agreed a tax deed could become a sufficient basis for a claim of adverse title under section 512. The decision in Peattie v. Gabel (155 App. Div. 786), which holds this, was cited. Nevertheless the Appellate Division held that the tax deed here was insufficient to become the basis of a claim of adverse possession under a written instrument because the instrument 11 must sufficiently identify the boundaries of the property ”. But if the description under which the occupant claimed title were sufficient to identify the boundaries, the question of adverse possession would not arise.
The test must necessarily be something different. The statute , refers to a person “ claiming a title founded upon a written instrument ” (Real Property Actions and Proceedings Law, *248 § 512). The instrument need not show a good title. The critical issue in a claim under the doctrine of adverse possession is possession and not record title. The claim that one has an instrument to justify his possession differs from a claim for possession without assertion of interest shown by an instrument, in the kind of physical act which accompanies possession; and this is spelled out in a comparison of section 512 with section 521.
A groundless or frivolous claim under a purported instrument would not justify reliance on the kind of possession described in section 512. But because the instrument arguably gives no sufficient title does not deprive one claiming title under it and possessing the land for the time, and in the manner prescribed, of the benefit of that section.
George’s claim based on a written deed certainly relevant to the land in dispute and at least arguably good cannot be summarily dismissed as groundless or frivolous. He comes, therefore, within the class of persons described in section 512.
Although none of these cases is precisely in point, each illustrates one aspect or another of claims of title by adverse possession resting on some form of written instrument and in total throw light on the general policy: Kennedy v. Smith (204 App. Div. 628, affd. 237 N. Y. 516); Matter of City of New York (Willard Parker Hosp.) (217 N. Y. 1); Shinnecock Hills & Peconic Bay Realty Co. v. Aldrich (132 App. Div. 118, affd. 200 N. Y. 533); Lewis v. New York & Harlem R. R. Co. (162 N. Y. 202); Donohue v. Whitney (133 N. Y. 178); Koch v. Ellwood (138 App. Div. 584); Weeks v. Martin (57 Hun 589, opn. 10 N. Y. S. 656).
The order of the Appellate Division should be reversed, with costs, and the judgment at Special Term reinstated.
Chief Judge Fuld and Judges Scileppi, Breitel, Jasen and Gibson concur; Judge Burke taking no part.
Order reversed, with costs, and the case remitted to Supreme Court, Ulster County, for further proceedings in accordance with the opinion herein.