Joseph Gallea et al., Respondents, v Hess Realty Corporation, Appellant.

Fourth Department, May 22, 1987

## APPEARANCES OF COUNSEL

*Mousaw, Vigdor, Reeves, Heilbronner & Kroll (Donald Smith* of counsel), for appellant.

*Mayberry, Licht & Goldman (Richard Mayberry* of counsel), for respondents.

## OPINION OF THE COURT

LAWTON, J.

Southern Oil Company (Southern) owned two adjoining parcels of land abutting Monroe Ave. in the Town of Pittsford. From 1969 to 1974 plaintiffs, or corporations controlled by plaintiff Joseph Gallea, leased the parcel identified as 3035 Monroe Ave. During this period, plaintiffs also occupied a small portion of the adjoining lot owned by Southern, identified as 3055 Monroe Ave. In 1974, plaintiffs acquired title to 3035 Monroe Ave., thereby terminating the lease. After obtaining title, plaintiffs continued to occupy and use the aforementioned portion of 3055 Monroe Ave.

In July 1983, Southern conveyed 3055 Monroe Ave. to defendant Hess Realty Corporation (Hess). On October 5, 1984 plaintiffs commenced this suit against Hess, asserting title by adverse possession to that portion of 3055 Monroe Ave. which they have used since 1969. Defendant answered the complaint, counterclaimed and asserted 10 affirmative defenses. We are concerned only with the ninth affirmative defense, alleging that plaintiffs' action is premature pursuant to RPAPL 531. Defendant moved for summary judgment relying upon this statute. In opposing defendant's motion, plaintiffs asserted that their lease of 3035 Monroe Ave. did not encompass the disputed parcel, and plaintiff Joseph Gallea admitted that he initially entered upon and continued to use the claimed parcel as he assumed that it was a portion of the leased parcel.

Special Term denied defendant's motion, holding as a matter of law that RPAPL 531 was inapplicable because no landlord-tenant relationship had existed between the parties with respect to the disputed parcel. We disagree.

Title by adverse possession is not favored (*Hassinger v Kline,* 110 Misc 2d 147, *affd* 91 AD2d 988). Over the years, various rules with respect to vesting of title by adversity have evolved. For the most part, these rules have now been codified in RPAPL article 5.

Basic to obtaining title by adversity is the requirement that the initial entry upon the land be truly adverse, i.e., without the permission of the owner. In *Hinkley v State of New York* (234 NY 309, 316-317), the court stated: "When the entry upon land has been by permission or under some right or authority derived from the owner, adverse possession does not commence until such permission or authority has been repudiated and renounced and the possessor thereafter has assumed the

attitude of hostility to any right in the real owner. 'Occupation must not only be hostile in its *inception,* but it must continue hostile, and at all times, during the required period of twenty years, challenge the right of the true owner in order to found title by adverse possession upon it. The *entry* must be strictly adverse to the title of the rightful owner, *for if the first possession is by permission it is presumed to so continue until the contrary appears.* If the occupation begins with the recognition of the real owner's estate it is presumed to be subservient, and that the one making the entry intends to hold honestly and not tortiously. The character of the possession depends on the intention with which entry is made and occupation continued. There is no disseisin until there is occupation with intention to claim title, and the fact of entry and the *quo animo* fix the character of the possession. The burden of proving all the facts necessary to constitute adverse possession is upon the one who asserts it, for in the absence of such proof possession is presumed to be in subordination to the true title.' *(Lewis* v. *New York & Harlem R. R. Co.,* 162 N. Y. 202, 220.)" A corollary to the above common-law rule was that where one entered by permission under a lease, there could not be an adverse taking until there was a clear break in relationship and the owner was put on notice of the tenant's or former tenant's claim *(Taylor v Goodenough,* 240 App Div 459; *Miller v Warren,* 94 App Div 192, *affd* 182 NY 539). This rule proved to be very difficult in its application: "Because it was uncertain whether specific acts were sufficient to constitute a clear repudiation of permission or authority or sufficient to constitute an ouster, it was difficult to determine when, or if, adverse possession commenced. Many land titles were thus rendered unmarketable by the presumption of nonadverse possession even after many years of exclusive occupancy by a tenant or tenant in common." (1975 Report of NY Law Rev Commn, 1975 NY Legis Doc No. 65 [P], at 2-3.) To correct this problem, the Legislature passed RPAPL 531, which provides: "Where the relation of landlord and tenant has existed between any persons the possession of the tenant is deemed the possession of the landlord until the expiration of ten years after the termination of the tenancy; or, where there has been no written lease, until the expiration of ten years after the last payment of rent; notwithstanding that the tenant has acquired another title or has claimed to hold adversely to his landlord. But this presumption shall cease after the periods prescribed in this section and such tenant

may then commence to hold adversely to his landlord." The statute creates a conclusive presumption of nonadversity for the prescribed 10-year period when the possession arises out of a landlord-tenant relationship. This presumption provides added protection to landlords by distinguishing claims by tenants whose possession initially is authorized and permissive from claims by strangers, whose claims are adverse from their inception. By the same token, it limits the period of presumed permission to 10 years after termination. This is made clear by the report of the New York Law Revision Commission dealing with this section, which stated: "It was clear that § 41 of the Civil Practice Act and its predecessor statute, § 373 of the Code of Civil Procedure, intended the period of adverse possession to commence only after a statutory period (20 years under § 373; 15 years under § 41; now, 10 years under § 531) during which a presumption operated to deem the occupancy of the tenant to be that of the landlord. (See *Whiting* v. *Edmunds,* 94 N. Y. 309, *Church* v. *Schoonmaker,* 115 N. Y. 570, *Church* v. *Shultes,* 4 App. Div. 378, *Hamlin* v. *People,* 155 App. Div. 680, *Taylor* v. *Goodenough,* 240 App. Div. 459, and 2 N.Y. Jurisprudence, § 91). Therefore, under the present statute (§ 531) a minimum period of twenty years must elapse from the last payment of rent or from the expiration of the lease before occupancy of a tenant may ripen into title by adverse possession. This twenty years must include ten years during which the tenant's occupancy is deemed that of the landlord and therefore not adverse (RPAPL, § 531) in addition to the ten years period of limitation for adverse possession to bar an action to recover real property (CPLR 212 [a])." (1975 Report of NY Law Rev Commn, 1975 NY Legis Doc No. 65 [P], at 4.)

The two crucial elements of RPAPL 531, the relationship of landlord and tenant, and permissive use of the property based upon that relationship are present here. It matters not that the disputed parcel is outside the metes and bounds description of the lease; had the Legislature intended such a limitation, it could easily have so provided. As plaintiffs have admitted that their possession of the disputed property initially was based on their lease and with the permission of their landlord, RPAPL 531 is applicable and bars their claims *(see, Risi v Interboro Indus. Parks,* 99 AD2d 466).

Accordingly, the order denying defendant's motion for sum-

mary judgment should be reversed and defendant's motion should be granted.

DILLON, P. J., CALLAHAN, GREEN and PINE, JJ., concur.

Order unanimously reversed, on the law, without costs, and defendant's motion granted.