**In re Sadie HAYNES, Debtor.**

**No. 01–12631(CB).**

United States Bankruptcy Court, S.D. New York.

Sept. 19, 2002.

Gus Michael Farinella, Esq., Jackson Heights, NY, for Debtor.

Michael D. Hess, New York City, By Hugh H. Shull III, Corporation Counsel, City of New York.

**DECISION GRANTING RELIEF FROM THE AUTOMATIC STAY AND DENYING MOTION FOR RECONSIDERATION**

CORNELIUS BLACKSHEAR, Bankruptcy Judge.

This matter comes before the Court on the City of New York's Motion for Relief from the Automatic Stay *nunc pro tunc* to May 17, 2001 and for limited reconsideration of this Court's decision on June 28, 2001 granting the Debtor an injunction prohibiting the City from transferring title to the property and voiding a foreclosure deed that has been conveyed subsequent to the Debtor's bankruptcy filing. In support of its Motion, the City argues that relief from the stay is appropriate because the Debtor, who is not the record holder of the disputed property, does not possess any interest greater than that of possession, and even if the Debtor did possess an interest, this interest has been extinguished by virtue of the Debtor's failure to redeem the property during the Mandatory Period provided for under section 11–412.1 of the City of New York Administrative Code.

In support of the continuation of the stay, the Debtor asserts that she has acquired title to the property by adverse possession and therefore the right that is being protected by the automatic stay is

not merely a possessory interest, but an ownership interest and that she should be given the opportunity to pay the tax arrears under her Chapter 13 plan.

The City's Motion is granted in part and denied in part.

### FACTS

Sadie Haynes (the "Debtor") moved into an apartment located at 66 West 120th Street (the "Property") in New York, New York on or about June 16, 1981 as an at-will tenant. The Debtor acknowledges that at the time she entered the property she knew the lawful owners to be Mr. and Mrs. Joseph and Lillian James, an elderly couple. After she moved into the apartment, the Debtor befriended Lillian James in that she provided Lillian with companionship and assisted Lillian with her personal needs.

Some time in April of 1982, Joseph James was hospitalized at Harlem Valley Psychiatric Center with a diagnosis of mental incapacity. Later that year in November, Lillian James was hospitalized in Bird S. Coler Memorial Hospital having been diagnosed with mental disorientation and dementia. Lillian and Joseph James did not have any children and with the exception of Lillian's brothers Henry and Charlie Gilmore and her sister Edna Martin Borden, the couple had no family.

In 1983, Henry Gilmore brought an action to set aside a fraudulent deed that purported to transfer the property from Lillian and Joseph James to a Rudolph Dorsett. An Order was issued by the New York State Supreme Court nullifying the transfer to Rudolph Dorsett. To date no documents have been filed in the county clerk's office to void the recorded deed.

At some point in 1984, Rudolph Dorsett filed an order to show cause to vacate the Dorsett judgment on grounds that he was not properly served. The Debtor signed an affidavit on behalf of the plaintiff, Henry Gilmore, Lillian's brother, in opposition to Dorsett's vacatur motion. In this affidavit the Debtor claimed that she knew Rudolph Dorsett to be the landlord and that she served him with the summons and complaint commencing the Dorsett Action on November 9, 1983.

In 1983, prior to the entry of a judgment in the Dorsett matter, Lillian's siblings Henry Gilmore, Charlie Gilmore and Edna Martin Borden professed to transfer the property to the Debtor by giving her the deed to the premises, which names Lillian and Joseph James, along with a picture of the premises with a note scrawled on the back that purports to convey the property to the Debtor. At the time of this alleged transfer, both Lillian and Joseph James were alive and the Debtor was under the impression that upon the death of both Lillian and Joseph James, she would become the owner of the property by virtue of the above-described conveyance.

In June of 1984, Henry Gilmore, Lillian's brother filed a petition to appoint the debtor as conservator of Lillian's property. Although the Debtor was appointed, her appointment was held in abeyance due to concerns over her ability to maintain Lillian's assets.

Lillian James died in April of 1985. It is believed that Joseph died in 1986. From 1985, following Lillian's death, until the present, the Debtor claims that she has held herself out to be the owner of the property in that she has rented and collected rent from the apartments on the premises. Indeed, she would probably have been able to continue operating as such had she timely paid the taxes as they became due. But in September 1999 the City commenced a foreclosure action against the Property under its Modified In Rem Foreclosure Statute. On August 9,

2000 the City was awarded a foreclosure judgment authorizing an award of possession.

The Modified In Rem Statute provides the City with the option of either taking title to foreclosed property or, in the alternative, transferring title to the foreclosed property to a qualified third party. Under section 11–412.1(d), the owner of the subject property, or a party in interest, may redeem the property by making full payment of the back taxes with statutory interest or by entering into an agreement to pay the arrearage with interest over a specified period of time. The redemption period in the instant case expired on December 11, 2000, prior to the Debtor's petition date of May 3, 2001.

On May 17, 2001, pursuant to the authority given to it under the Modified In Rem Statute, the City transferred the property by foreclosure deed to the Neighborhood Restore Housing Development Fund Corporation, a not-for-profit entity. The Debtor moved to enjoin the City's post-petition transfer. On June 28, 2001, this Court ruled that the transfer was in violation of the automatic stay and voided the transfer. The present Motion soon followed.

## DISCUSSION

The starting point for this Court is the issue of whether the Property, by virtue of the doctrine of adverse possession, is owned by the Debtor.

### Adverse Possession: Claim of Title N.Y. RPAPL § 521

Adverse possession has been looked upon as being a form of legalized theft. *See e.g.* Henry W. Ballantine, *Title by Adverse Possession,* 32 Harv. L.Rev. 135 (1918). This view is not without justification. If a claimant prevails on her claim of adverse possession, she will forever divest the original owner of his title and vest in

herself title in fee simple absolute—the paramount form of ownership of a possessory estate.

New York's Real Property Actions and Proceedings Law ("RPAPL") section 521 provides for adverse possession under claim of title. A party claiming ownership by way of adverse possession is required to show by clear and convincing evidence that her initial entry was under a claim of right, and her continued possession was hostile, open and notorious, exclusive and continuous for a period of ten (10) years. *Longshore v. Hoel Pond Landing Inc.,* 727 N.Y.S.2d 518, 519, 284 A.D.2d 815 (App. Div.2001); *see also* N.Y. Real Prop. Acts. Law § 521 (Consol.2001) The requirements of actual, exclusive, open and notorious possession for a continued period are the easiest requirements to meet because either the claimant lived or used the property for the statutory period or she did not. *See Brand v. Prince,* 35 N.Y.2d 634, 364 N.Y.S.2d 826, 324 N.E.2d 314, 316 (1974) (holding that exclusive and continuous means nothing more that that there must be possession in fact of a type which would give the owner a cause of action in ejectment against the occupier throughout the statutory period).

The hurdle that defeats most claims of adverse possession is that of hostility. This requirement, which is governed by an objective standard, leaves absolutely no room for equivocation. The initial entry on the property must be under a claim of absolute right without recognition or deference to the interest or rights of any other. *See MAG Assoc.Inc. v. SDR Realty, Inc.,* 669 N.Y.S.2d 314, 316, 247 A.D.2d 516, 517 (App.Div.1998) (stating that "an admission by the party in possession prior to the vesting of title that title belongs to another, will destroy the element of hostile possession"); *Shandaken*

*Reformed Church of Mount Tremper v. Leone,* 451 N.Y.S.2d 227, 228, 87 A.D.2d 950, 951 (App.Div.1982) (holding that adverse possession will not arise until there is a distinct assertion of a right hostile to the owner and brought home to him); *Miller v. Warren,* 87 N.Y.S. 1011, 94 A.D. 192, 194 (App.Div.1904) (stating that to be adverse, the possession must be inconsistent with the right of possession of another). If a claimant can steadfastly maintain her position as "true owner" her arrogance and vigilance will at the end of the statutory period be rewarded by a judgment that quiets title in her name.

▮ It logically follows therefore that if one enters upon land based on permission granted from the owner, the entrant's possession or occupation cannot support a claim of adverse possession for it inherently lacks the required hostility. To be sure, "if the first possession is by permission it is presumed to so continue until the contrary appears." *Shandaken Reformed Church of Mount Tremper v. Leone,* 451 N.Y.S.2d 227, 228, 87 A.D.2d 950, 951 (App.Div.1982); *see also Pitson v. Sellers,* 613 N.Y.S.2d 1005, 1006, 206 A.D.2d 575, 576–77 (App.Div.1994). To transform a permissive entry into an adverse one, the possessor must disclaim the title of the true owner or demonstrate a "surrender of the original possession and a retaking under an independently asserted claim of right and title." *Miller v. Warren,* 87 N.Y.S. 1011, 94 A.D. 192, 194 (App.Div. 1904). Absent assertions to the contrary, the law presumes that the entrant intends to hold honestly and not tortiously. *Hinkley v. State of New York,* 137 N.E. 599, 601, 234 N.Y. 309, 317 (1922).

▮ It is unclear when the Debtor believed her adverse possession began. In one instance she claims that she became the true owner after the death of Lillian James (see Debtor's Reply in Opposition to the City's Motion to Vacate the Automatic Stay 8/6/2001 ("Debtor's Reply 8/6/2001") at ¶ 70), but in another the Debtor claims that she believed herself to be the owner after both Lillian James and Joseph James died. (Debtor's Reply 8/6/2001 at ¶ 93). Regardless of when the Debtor asserts that her claim of adverse possession began to run, her claim must fail.

▮ First, the Debtor entered onto the premises with the permission of the lawful owners as their tenant and she never refuted, disclaimed or acted in contradiction to this license. Even when both Lillian James and Joseph James were institutionalized, the Debtor did not believe that she became the owner. She continued to acknowledge her status as a tenant and as a friend and helper to Lillian. "The character of the possession depends on the intention with which entry is made and occupation is continued." *Gallea v. Hess Realty Corp.,* 515 N.Y.S.2d 683, 684, 128 A.D.2d 274, 276 (App.Div.1987). To remove herself from under the right and authority given to her by the owners, the Debtor must introduce clear and convincing proof that she operated beyond the scope of her authority and asserted her own claim of right to the property. The Debtor has failed to provide proof of such hostility.

The Debtor asserts that she stopped paying rent some time after Lillian's hospitalization. At that point in time, she began collecting rent from the other tenants. The Debtor's failure to continue to pay and the fact that she began to collect rent from other tenants does not fulfill the hostility requirement because at that time the Debtor was acting in what she perceived to be a fiduciary role.

The Debtor submits that she began to care for Lillian by cleaning Lillian's apartment, taking her to and from the hospital,

paying her bills and assisting with the management of the Property. During this time, the Debtor, although performing the duties of the owner, did not assert any claim or right to title in the Property. She held herself out as the assistant of the owner. There is a distinct difference between the Debtor's position and that of a truly adverse possessor. The difference is that the former does not demonstrate the required hostility towards the rights of the true owner, whereas the latter enters upon property with the belief that she is the rightful owner and clearly asserts herself as the owner.

Second, the Debtor could argue that her period of adverse possession began to run at the death of Lillian James, however, her claim still must fail. Lillian James died intestate and childless. Section 4–1.1 of the New York Estates, Powers and Trusts Law (the EPTL) controls the descent and distribution of property of an intestate decedent's estate. Pursuant to section 4–1.1(a)(2) of the EPTL, all of Lillian's property, upon her death, passed to her surviving spouse Joseph James. The Debtor could argue that her period of adverse possession began to run against Joseph James in 1985 after the death of Lillian. However, he died intestate, soon after his wife in 1986.

■■■■ As mentioned above, Joseph and Lillian did not have any children and Joseph had no known family. Under New York law "title vests at once, upon the death of a decedent, intestate and without heirs." *Matter of Clark*, 68 N.Y.S.2d 487, 492, 271 A.D. 691, 696 (App.Div.1947); *See also* N.Y. Const., art. I, § 10; N.Y. Aban. Prop. Law § 200 (Consol.2001); *Matter of Bonner*, 80 N.Y.S.2d 122, 125, 192 Misc. 753, 756 (Sur. Crt 1948). The state's title in escheated property is perfected even absent the state taking affirmative actions to secure its title. *Matter of Melrose Avenue*, 136 N.E. 235, 237, 234 N.Y. 48, 53

(1922). It is generally held that adverse possession may not run against the state. *Genesee Val. C.R. Co. v. Slaight*, 1 N.Y.S. 554, 556 (Gen. Term 1888); *Hamlin v. People*, 140 N.Y.S. 643, 155 A.D. 680, 683 (App.Div.1913). Hence, upon the intestate death of Joseph James, the Property escheated to the State under operation of law and the Debtor cannot gain title by adverse possession against the State.

For the foregoing reasons, any assertion of the Debtor that she has gained ownership of the Property by adverse possession pursuant to RPAPL § 521 fails because the Debtor has not shown that her entry upon the Property was adverse or that she converted her permissive entry into a hostile one. Additionally, upon the death of Joseph James, the property escheated to the State, and one cannot gain ownership of property by way of adverse possession against the State.

### Adverse Possession: Color of Title N.Y. RPAPL § 511

■■■■ New York's RPAPL section 511 provides for an alternate method for proving ownership by adverse possession. Unlike the form of adverse possession detailed in the prior section, adverse possession pursuant to section 511 is achieved by establishing that entry was made under color of title as opposed to claim of right. Obviously, even if one enters land under a color of title, the adverse possessor is also asserting a claim of right by virtue of the deed or other writing that purports to convey the property.

The Debtor asserts that some time in 1983, Lillian James' siblings gifted the Property to her by giving her the deed to the premises along with a photograph of the Property that had a note scrawled on the back. At the time of the purported gift, Lillian and Joseph, although hospitalized, were both alive. Therefore, Lillian's siblings had no interest or rights in the Property that could be gifted or conveyed.

Possibly, had Joseph died before Lillian, the EPTL intestate distribution scheme would have resulted in Lillian's siblings inheriting the property at which point they could have gifted it to the Debtor. Unfortunately, that is not what occurred in the instant case.

■ Although the law is clear that the instrument upon which a person claiming adverse possession under color of title relies need not give sufficient title, the claimant must possess the land for the prescribed time and in the prescribed manner. *See Goff v. Shultis,* 26 N.Y.2d 240, 248, 309 N.Y.S.2d 329, 257 N.E.2d 882, 886 (1970); *McGuirk v. Ferran,* 635 N.Y.S.2d 794, 796, 222 A.D.2d 943, 946 (App.Div.1995); *Criswell v. Noble,* 61 Misc. 483, 113 N.Y.S. 954, 957 (Sup.Crt.1908); *Hilton v. Bender,* 2 Hun 1 (N.Y.1874), *rev'd on other grounds* 69 N.Y. 75, 1877 WL 11921; *Green v. Horn,* 112 N.Y.S. 993, 996, 128 A.D. 686 (App.Div.1908).

The prerequisites detailed in the prior section clearly require that the *entry* be made under a claim of right pursuant to colorable title. The Debtor must have entered the Property with the deed and picture and occupied the same as if she were the true owner. The fact that she entered the Property without colorable title, but eventually received some form of title upon which she bases her ownership does not cure her lack of hostility. Indeed, the mere fact that she received the title and believed that her ownership would vest at some point in the future (after the death of both Lillian and Joseph) is enough to support a finding that she lacked the requisite hostility. There is no room for contingencies or doubt when one is claiming absolute right to title.

If this Court were to find that the Debtor did possess the requisite hostility, victory would still evade the Debtor. She was operating under the belief that her ownership would commence upon the death of both Lillian and Joseph. As explained above, upon the intestate death of Joseph, the Property escheated to the State and it is generally held that adverse possession cannot run against the State.

For the foregoing reasons, the Debtor did not gain ownership of the Property by virtue of adverse possession by color of title.

### The In Rem Action and the Mandatory Period

■ The City argues that any interest that the Debtor may have had in the Property has been extinguished by virtue of the expiration of the Mandatory Period under section 11–412.1(d) of the Administrative Code.

Section 11–412.1 of the New York City Administrative Code authorizes the City of New York to foreclose by way of an in rem action against those properties that are delinquent in tax payments. Prior to the entry of a judgment in favor of the City, a court must determine that the City has met all of the requirements, including notice requirements, of the chapter. *See* Admin. Code § 11–412.1(a); Admin. Code § 11–406 (detailing the notice requirements). If a final judgment is entered in favor of the City, a Mandatory Period begins to run pursuant to § 11–412.1(d). The Mandatory Period lasts four (4) months during which "*any* person claiming to have an interest in such parcel shall have the right to make a payment to the commissioner of finance consisting of all taxes, assessments, and other legal charges owing on said parcel." Admin. Code § 11–412.1(d) (emphasis added). Within the four-month period, any such interested person may also request an installment agreement. *Id.* Following the expiration of the Mandatory Period without payment, the commissioner of finance may execute a deed conveying the foreclosed property to the City or a qualified third party. Admin. Code § 11–412.1(c).

On or about September 24, 1999, the City commenced a foreclosure action against the Property pursuant to the above-described statute. Affidavits of Regularity were filed in the foreclosure action that detail the actions taken by the City to notify parties-in-interest of the pending foreclosure. The City submits that on September 30, 1999 Notices of Foreclosure were mailed to the owner of record, mortgagees, lienors, encumbrancers and other persons entitled to receive such notice by virtue of a filed owner's registration card.[1] As of October 8, 1999, the City began posting notices of the foreclosure action in conspicuous public places such as the Hall of Records and Office of the County Clerk, and began publishing a Notice of Foreclosure in the City Record, the New York Law Journal, and the Daily News. On or about August 9, 2000, a determination was made that the City had met all requirements, and the City was awarded a Foreclosure Judgment that was entered by the New York County Clerk's Office. A notice of the judgment was sent to the Debtor on August 14, 2000 and indicated that the Mandatory Period would expire on December 11, 2000.

The Debtor claims that she did not learn of the foreclosure until August 2000. After learning of the foreclosure, the Debtor began speaking to a Mr. Robert Nall at the New York City Department of Housing Preservation and Development ("HPD"). The Debtor alleges that Mr. Nall told her on several occasions that he would help her save her home and advised her to make payments to HPD to reduce the amount owed. The Debtor submits that she made payments from August 2000 through February 2001 in the amount of three thousand seventy-five ($3,075) dollars. The account was frozen as some

point in February 2001 and HPD refused any additional payments from the Debtor. Based on the representations made by Mr. Nall, an HPD employee, and the Debtor's reliance upon these statements, the Debtor argues that the City should be estopped from arguing that the four month Mandatory period has expired and the Debtor should be allowed to stay in possession of the Property, and to pay the delinquent taxes through a Chapter 13 plan that is funded by the monthly rents that she collects.

█ The Mandatory Period prescribed under § 11–412.1(d) is the period during which an individual can exercise her right of redemption. If a petition is filed while the redemption right is unexpired, the equitable right of redemption becomes a part of the bankruptcy estate. *Canney v. Merchants Bank,* 284 F.3d 362, 372 (2d Cir. 2002); *see also Brown v. Dellinger,* 734 F.2d 119, 123 (2d Cir.1984) (explaining that the phrase "all legal or equitable interests of the debtor in property" used in section 541 of the Bankruptcy Code has been given the broadest possible interpretation). However, if at the date of filing, the right of redemption has already expired, there is nothing there to be included in the bankruptcy estate and there is no right to be protected under the automatic stay. *See GSVC Restaurant Corp.,* 3 B.R. 491 (Bankr.S.D.N.Y.) *aff'd* 10 B.R. 300 (S.D.N.Y.1980).

The Debtor no longer has the right to redeem. The Mandatory Period expired on December 11, 2000. The Debtor alleges that she never received notice, but the state court, prior to granting the judgment, found that all requirements, including notice requirements, were met. This Court has not been presented with any facts that warrant it to doubt the state court's finding.

---

1. The Debtor, following the action brought by Henry Gilmore to appoint her as conservator of Lillian's estate, filed an owner's registration card.

Even if this Court were to adopt the expiration date of April 27, 2001 alleged by the Debtor, she is still outside of the redemption period for her petition was not filed until May 3, 2001. At the time of filing, the Debtor's window of opportunity had been closed and the field from which she hoped her rights would spring was barren. Although this Court recognizes that the Debtor filed her petition in an attempt to protect whatever interests she believed she had, bankruptcy courts do not possess the power to cultivate rights where none can grow.

On the petition date, the Debtor had a possessory interest in the property. However, a possessory interest alone is "so tenuous as to represent merely a scintilla of an interest insufficient to warrant the continued protection of the automatic stay." *In re Liggett*, 118 B.R. 213, 218 (Bankr.S.D.N.Y.1990). In this regard, it is inconsequential if the Debtor acquired through adverse possession or not. The moment the Mandatory Period expired without payment of the arrearage, the Debtor, like any other owner or party-in-interest, lost any ownership right that she may have had. Hence, this Court finds that cause exists to grant relief from the automatic stay as the Debtor has no interest that warrants continued stay protection.

### CONCLUSION

Conclusions of law:

1. The Debtor did not gain ownership of the Property by way of adverse possession because she failed to prove by clear and convincing evidence that she met all of the requirements of the doctrine. Namely, the Debtor failed to establish that she possessed the requisite hostility.

2. Even if the Debtor had gained ownership by way of adverse possession the result would be the same. The Debtor's redemption period expired pre-petition, hence upon entering bankruptcy, she had no right of redemption to protect. Furthermore, once the Mandatory Period expired without payment of the outstanding taxes, the City's right to transfer the property vested and the Debtor was left with a mere possessory interest that does not warrant continued protection of the automatic stay.

3. The Debtor's remaining objections are overruled.

4. The City is entitled to relief from stay *nunc pro tunc* to May 17, 2001.

5. The Court declines to reconsider its prior Order voiding the May 2001 Order.

The City is directed to settle an Order on five (5) days notice that is consistent with this decision.