**In re BEST PAYPHONES, INC., Debtor.**

**No. 01–15472 (SMB).**

United States Bankruptcy Court, S.D. New York.

June 24, 2002.

Michael A. Cardozo, Corporation Counsel of the City of New York, Counsel for the Department of Information Technology and Telecommunications, New York City, M. Diane Jasinski, Assistant Corporation Counsel Of Counsel.

Mayne Miller, New York City, for Debtor.

## MEMORANDUM DECISION DENYING MOTION FOR RELIEF FROM STAY AS MOOT

STUART M. BERNSTEIN, Chief Judge.

Prior to the filing of the debtor's chapter 11 petition, the New York City Department of Information Technology and Telecommunications ("DoITT") commenced administrative proceedings to fine the debtor for operating payphones without the proper permit. After the petition was filed, the administrative law judge ("ALJ") dismissed the violations, ruling that the City had failed to terminate the debtor's right to operate the payphones. DoITT now seeks relief from the automatic stay to appeal from the adverse administrative determination.

The ALJ's decision violated the automatic stay, and was void *ab initio*. Since there is no valid order or decision to appeal from, DoITT's motion is denied as moot.

## BACKGROUND

### A. Introduction

Except as otherwise noted, the facts are uncontested. The debtor is engaged in the business of operating public payphones in New York City. Over the years, the City has established various regulatory schemes, administered by DoITT, to control such services. Prior to the enactment of Local Law 68 by the City Council in 1995, which established the current regulatory scheme and became effective on March 2, 1996, a number of providers, including the debtor, were operating payphones. To accommodate these providers and ensure ample time to phase in the new regulatory program, DoITT established an interim operating protocol for the existing telephones.

The interim regulations essentially "grandfathered" the payphones installed and activated before March 1, 1996. These "interim eligible public pay telephones" could continue to operate provided that they appeared on a list (the "Interim Registry") submitted to DoITT, paid the interim occupancy fees, and no objection

was lodged to the continued operation by the Commissioner of DoITT. It is undisputed that the debtor was authorized to operate under the interim regulations.

The new regulations, effective on March 2, 1996, were designed to replace the pre-existing system and the interim regulations with a franchise system. The City Council legislation and DoITT's implementing rules continued the right to operate under the Interim Registry until one of three terminating events occurred:

(i) the owner has declined to respond to the request for proposals or other solicitation of proposals issued by the Commissioner [1] for the purpose of entering into franchise agreements for the installation, operation and maintenance of public pay telephones within the time period specified in such request for proposals or other solicitation of proposals and sixty days have elapsed following such failure to respond; (ii) the Commissioner has determined not to propose the award of a franchise to such owner to the Franchise and Concession Review Committee [2] and sixty days have elapsed following notification to such owner of the Commissioner's determination; or (iii) the Franchise and Concession Review Committee has determined not to approve a proposed franchise agreement for such owner and sixty days have elapsed following notification to such owner of the Committee's determination.

N.Y. R. & Regs., tit. 67, § 6–23; *accord* N.Y. City Local Law 68/1995 § 6(a)(limiting notification period to 30 days).

### B. The Franchise Award to the Debtor

As noted, the debtor had installed and activated approximately 830 public pay telephones on City property prior to March 1, 1996, and operated its payphones under the Interim Registry. On June 9, 1997, DoITT issued a revised request for proposals, looking toward the creation of the franchise system envisioned by the new guidelines. The debtor responded, and by resolution dated August 11, 1999, the Franchise and Concession Review Committee ("Franchise Committee") approved the grant of a franchise to the debtor, as well as others. The approval required the debtor to execute and deliver the franchise agreement as a condition to the award. DoITT subsequently sent the closing package, which included the franchise agreement, to the debtor for its execution. DoITT asked the debtor to return the completed materials by October 15, 1999, but later extended the due date to November 15, 1999.

### C. The Attempted Termination of the Debtor's Franchise

The Debtor failed to return the completed materials for reasons immaterial to this decision, except to note that the debtor objected to many of the provisions in the proposed franchise agreement. In any event, on January 13, 2000, an Assistant

---

**1.** The "Commissioner" refers to Commissioner of the Department of Information Technology and Telecommunications or any successor agency. N.Y.City R. & Regs., tit. 67, § 6–01.

**2.** The "Franchise and Concession Review Committee" includes the following officials or their designees: the mayor, the director of the office of management and budget, the corporation counsel, the comptroller, and one additional appointee of the mayor. In addition, it also includes the borough president of the affected franchise. If the franchise relates to more than one borough, "the borough presidents of such boroughs shall designate one of such borough presidents or another individual to serve as a member of the committee for the purpose of considering the matter." N.Y. City Charter § 373(a).

Corporation Counsel wrote to the debtor (the "January 13, 2000 Letter"), stating that the Franchise Committee's approval of the franchise had been conditioned on the execution and delivery of the franchise agreement and other required closing documents, and the debtor had failed to meet the condition. As a result, the Franchise Committee "can therefore be deemed to have determined not to approve a franchise for [the debtor]."

The January 13, 2000 Letter nevertheless granted the debtor a final, sixty day period to submit the franchise documentation. If it did not, "[the debtor's] opportunity to become a franchise holder during the current phase of franchise grants will end." The January 13 Letter reiterated this warning in its conclusion:

> If [the debtor] fails within sixty days to (1) enter into an agreement to sell its public pay telephones as described above, or (2) to remove all its public pay telephones from City property, or (3) submit executed copies of the Franchise Agreement and all associated closing documents (complete, accurate and in acceptable form) as described above, then any and all of [the Debtor's] phones located on City property shall be subject to removal by the City, pursuant to Section 6–26(c) of Title 67 of the Rules, and [the Debtor] shall be considered for all purposes a non-holder of a City franchise.

### D. The Decision of the Environmental Control Board (the "ECB")

The debtor did not comply with any of the conditions in the January 13, 2000 Letter. As a result, DoITT removed twenty three of the debtor's public pay-phones from City property between May 8 and May 10, 2000, and issued 23 Notices of Violation. Each violation charged the debtor with operating and maintaining a telephone without a permit, and initiated an administrative proceeding before the ECB to collect a $900.00 fine for each violation. The Notices of Violation stated when and where to appear for the hearing.

The ALJ conducted four days of hearings during the summer and fall of 2000, (*City of New York v. Best Payphones, Inc.,* Violation no. 091–456–568, at ¶ 5 (N.Y. City Envtl. Control Bd. Nov., 7, 2001) ("ECB Decision")), but the matter had not been decided prior to October 23, 2001, chapter 11 petition date. On October 31, 2001, the debtor's president, Michael Chaite, attended a scheduled pre-hearing conference, without counsel. It does not appear that he advised the ALJ that the debtor had filed a bankruptcy petition, or requested a stay based on the filing. (*Id.* ¶¶ 7–8). Instead, he requested an adjournment, apparently to obtain substitute counsel. (*See id.* ¶ 8.) The ALJ denied the request, and since he had a fully developed record,[3] he reserved decision. (*See id.* ¶ 9.)

The ALJ rendered the ECB Decision dismissing the violations one week later. He observed that the debtor was a member in good standing on the Interim Registry, and its right to operate continued until the occurrence of one of three terminating events set forth in Local Law 68/1995 and the corresponding DoITT regulations, quoted above. (ECB Decision ¶¶ 23–32). Further, the January 13, 2000 Letter did not revoke the Franchise Committee's August 1999 approval of a franchise, thereby satisfying the third terminating event. Rather, the Franchise Committee had to

---

**3.** After conducting the four day hearing, the ALJ had dismissed the original twenty-three violations for procedural reasons. (ECB Decision ¶¶ 5–6.) DoITT reissued twenty-three identical notices, leading to the October 31 hearing. (*Id.* ¶ 7.)

make a "subsequent determination" in accordance with the procedures set out in the relevant laws and regulations. (*Id.* ¶ 39.) The Corporation Counsel, the author of the January 13, 2000 Letter, was not authorized to make that determination, and accordingly, the debtor's right to operate under the Interim Registry remained intact. (*Id.* ¶¶ 44–45.) As a result, the ALJ dismissed the Notices of Violation.

### E. The Adversary Proceeding and the TRO

In response to the ECB Decision, DoITT announced a meeting of the Franchise Committee for December 27, 2001. The meeting was designed to sidestep the administrative process and the ECB Decision. Its avowed purpose was to disapprove the debtor's franchise, although the proposed resolution expressed the sentiment that the franchise approval had already terminated by virtue of the debtor's failure to meet the submission deadlines.

The announcement prompted the debtor to commence an adversary proceeding in the Bankruptcy Court on December 21, 2001, against DoITT and the Franchise Committee. The debtor sought preliminary and permanent injunctive relief restraining the defendants from taking any action to interfere with the debtor's ability to operate its pay telephone business under the Interim Registry. The first of the two claims alleged that the meeting scheduled for December 27, 2001 violated the automatic stay, and the second sought equitable relief on the ground of unjust enrichment. The debtor also moved by order to show cause for a temporary stay against the proposed action.

On December 26, 2001, and over the defendants' objection, I issued a temporary restraining order (the "TRO") pending the hearing and determination of the debtor's motion for a preliminary injunction. As set forth in the TRO, it appeared that the debtor's right to operate pursuant to the Interim Registry and its possible right to become a franchisee were "property of the estate," and the proposed meeting of the Franchise Committee would cause irreparable harm to those rights. Consequently, the TRO enjoined the Franchise Committee and DoITT from taking any action to terminate the previously awarded franchise or its right to operate its phones. The TRO was subsequently continued, with the defendants' consent, pending the hearing on the preliminary injunction. In the interim, the debtor filed an unsigned, amended complaint adding the claim that many of the provisions of the proposed franchise agreement violated the Telecommunications Act of 1996.[4]

### F. The Current Motion

By this motion, DoITT seeks relief from the automatic stay to appeal the ECB Decision. The application makes three arguments: (1) the ECB proceeding is exempt from the automatic stay under 11 U.S.C. § 362(b)(4) (*Application to Lift Automatic Stay to Permit the ECB Appeal to Go Forward,* dated May 30, 2002 ("*DoITT Application*"), at ¶ 28), (2) the ECB Decision is void as a violation of the automatic stay, (*id.* ¶ 29), and (3) DoITT is entitled to relief from the automatic stay under the balancing test set forth in *Sonnax Industries, Inc. v. Tri Component Products*

---

4. The amended complaint found on the Electronic Court Filing System is not the same amended complaint that the debtor served on the defendants. *Compare* undated Amended Complaint (ECF Doc. No. 22) *with Application to Withdraw the Reference Pursuant to 28*

*U.S.C. § 157(d) and to Transfer Adversary Proceeding to the United States District Court for the Eastern District of New York,* dated Apr. 17, 2002, Ex. A (ECF Doc. No.13) *and* Answer to Amended Complaint, dated May 7, 2002 (ECF Doc. No. 17).

*Corp. (In re Sonnax Industries, Inc.)*, 907 F.2d 1280 (2d Cir.1990). (*DoITT Application* ¶¶ 30–31.) I decline to consider the first argument because it was asserted in one sentence without citation to any authority other than the statute, and move on to the second.[5]

▮ Section 362(a)(1) stays any act to commence or continue a lawsuit or other proceeding to recover a pre-petition claim against the debtor.[6] The automatic stay is "one of the fundamental debtor protections provided by the bankruptcy laws." H.R.Rep. No. 95–595, at 340 (1977), U.S.Code Cong. & Admin.News 1978, at 5963, 6296; *accord Eastern Refractories Co. v. Forty Eight Insulations Inc.*, 157 F.3d 169, 172 (2d Cir.1998). It is effective immediately upon filing without further action. *Id.; Rexnord Holdings, Inc. v. Bidermann*, 21 F.3d 522, 527 (2d Cir.1994). Further, it is not limited to the litigants, and extends to the non-bankruptcy court as well. "Once triggered by a debtor's bankruptcy petition, the automatic stay suspends any non-bankruptcy court's authority to continue judicial proceedings then pending against the debtor. This is so because § 362's stay is mandatory and 'applicable to all entities', including state and federal courts." *Maritime Elec. Co. v. United Jersey Bank*, 959 F.2d 1194, 1206 (3d Cir.1991); *accord Ellison v. Northwest Eng'g Co.*, 707 F.2d 1310, 1311 (11th Cir.1983)(automatic stay prevented federal appeals court from deciding case that had been briefed and argued pre-petition).

▮ "[A]ny proceedings or actions described in section 362(a)(1) are void and without vitality if they occur after the automatic stay takes effect." *Rexnord Holdings*, 21 F.3d at 527; *accord Eastern Refractories*, 157 F.3d at 172; *cf. 48th St. Steakhouse, Inc. v. Rockefeller Group, Inc. (In re 48th St. Steakhouse, Inc.)*, 835 F.2d 427, 431 (2d Cir.1987)(landlord's termination notice violated 11 U.S.C. § 362(a)(3), and was void), *cert. denied*, 485 U.S. 1035, 108 S.Ct. 1596, 99 L.Ed.2d 910 (1988). This includes most post-petition judicial action. While ministerial court actions are excepted[7], *Rexnord Holdings, Inc.*, 21 F.3d at 527 (entry of judgment by clerk is not continuation of judicial proceeding under § 362(a)(1)), the issuance of

---

**5.** According to the *DoITT Application* (¶ 28), "DoITT respectfully submits that the proceeding before the ECB ... constitutes an exercise off [*sic*] regulatory authority expressly exempt from the automatic stay pursuant to Section 362(b)(4) of the Bankruptcy Code." The Court's Local Bankr.R. 9013–1(b) requires every moving party to serve and file a memorandum of law. In its motion, DoITT acknowledged the requirement, but asked the Court for a waiver because "the points and authority which is relied upon in making the instant motion are adequately set forth above." (*DoITT Application* ¶ 36.) I disagree. The § 362(b)(4) issue is a difficult one, and the mere reference to the statute is neither helpful nor adequate. Further, the Court has admonished the parties in the past that they must serve memoranda of law with their motions. Nevertheless, there is no need to await further briefing and delay the resolution of the motion because I agree with DoITT's

alternative argument that the ECB Decision is void *ab initio*.

**6.** Section 362(a)(1) provides:

(a) Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title ... operates as a stay, applicable to all entities, of—
(1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title....

**7.** "A ministerial act is one that is essentially clerical in nature." *Soares v. Brockton Credit Union (In re Soares)*, 107 F.3d 969, 974 (1st Cir.1997)

a decision by a judge or similar officer is clearly prohibited, and therefore, void. *Soares v. Brockton Credit Union (In re Soares)*, 107 F.3d 969, 975 (1st Cir. 1997)(state court judge's post-petition direction to enter a default judgment against the debtor violated the automatic stay, and was void); *Savers Fed. Savs. & Loan Ass'n v. McCarthy Constr. Co. (In re Knightsbridge Dev. Co.)*, 884 F.2d 145, 148 (4th Cir.1989)(arbitration award issued post-petition violated stay, and was void even though based on pre-petition evidence); *Ellis v. Consolidated Diesel Elec. Corp.*, 894 F.2d 371, 372–73 (10th Cir.1990)(district court grant of summary judgment post-petition violated automatic stay, and was void); *see Pope v. Manville Forest Prods. Corp.*, 778 F.2d 238, 239 (5th Cir.1985)(reversing district court dismissal order on ground that its entry was prohibited by the automatic stay).

■■ Although an action in violation of the stay is void, the bankruptcy court nevertheless has the power to validate it. It is important, in this regard, to distinguish between terminating the automatic stay and annulling it, either of which is permitted under 11 U.S.C. § 362(d). An order terminating the automatic stay only acts prospectively, but an order annulling the automatic stay *nunc pro tunc* acts retroactively to validate otherwise void actions taken post-petition. *Eastern Refractories Co.*, 157 F.3d at 172; *In re Soares*, 107 F.3d at 976.[8] The distinction may appear largely semantic, but it has a practical consequence. If the action is void *ab initio*, the party that wants to validate it (generally, the creditor) must move to annul the stay; if it is voidable, the party

seeking to avoid it (generally, the debtor) must seek relief. *Id.*

■ With this background, we turn to the pending motion. The ECB Decision was issued post-petition through no fault of the ALJ or DoITT, neither of whom were advised of the bankruptcy filing. Nevertheless, the issuance of the ECB Decision violated the automatic stay, even though it was based entirely on the pre-petition record. *See In re Knightsbridge*, 884 F.2d at 148. No party in interest has moved under § 362(d) to annul the stay, and accordingly, the ECB Decision is void.

■ This conclusion is not altered by the fact that the DoITT rather than the debtor invoked the consequence of violating automatic stay. The operation of the stay does not depend on the outcome of the proceeding, and acts that favor the debtor are still void if they violate the automatic stay. *Ellis v. Consolidated Diesel Elec. Corp.*, 894 F.2d at 373; *see Pope v. Manville Forest Prods. Corp.*, 778 F.2d at 239 (reversing order dismissing action against the debtor that was entered in violation of the automatic stay). Otherwise, the debtor could hold the automatic stay as a "trump card," and play it only after he had litigated his case to an unfavorable result. *In re Calder*, 907 F.2d 953, 956–57 (10th Cir.1990). I suspect that if the debtor had lost the ECB litigation, it would have felt compelled to bring this to the Court's attention, and seek to invalidate the result on the same ground currently asserted by DoITT.

Since the ECB Decision is void, there is nothing to appeal from, and DoITT's motion for relief from the automatic stay to continue the appeal is moot. In the event

---

**8.** The ability to nullify the stay retroactively has lead some courts to conclude that an act in violation of the stay is voidable instead of void. *E.g., Dott v. Metz*, No. CV 96–5462(RJD), 1998 WL 427555, at *2 (E.D.N.Y. Jan. 21, 1998); *see In re Soares*, 107 F.3d at 976. The majority view (to which the Second Circuit adhered in *Eastern Refractories* ) treats the violation as void. *Soares*, 107 F.3d at 976.

that the debtor seeks to annul the stay, DoITT is free to argue that stay relief should extend to any appellate or judicial proceedings relating to the ECB Decision. Settle order on notice.