**In re John P. LANKFORD and Sha D. Lankford, Debtors.**

**John P. Lankford and Sha D. Lankford, Plaintiffs,**

**v.**

**Advanced Equities Inc., Defendant.**

**Bankruptcy No. 03–02885.**
**Adversary No. 03–9221.**

United States Bankruptcy Court,
N.D. Iowa.

Jan. 20, 2004.

Henry E. Nathanson, Cedar Rapids, IA, for Jon Patrick Lankford and Sha Donyel Lankford.

Jon Patrick Lankford, pro se.

Sha Donyel Lankford, pro se.

## FINAL ORDER

PAUL J. KILBURG, Chief Judge.

This matter came before the undersigned on January 7, 2004. Plaintiffs/Debtors Jon and Sha Lankford appeared. Robert Miell appeared as Treasurer of Defendant Advanced Equities, Inc. None of the parties was represented by an attorney. After hearing testimony of the parties, the Court took the matter under advisement. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (G).

## STATEMENT OF THE CASE

Debtors filed a complaint against their former landlord, Advanced Equities, Inc. ("Equities"), seeking damages for violation of the automatic stay. Although Equities did not file an answer and default has entered, Mr. Miell appeared as its representative at the time scheduled for hearing on Debtors' Motion for Default Judgment. With the consent of the parties, the Court examined Mr. Lankford and Mr. Miell at the hearing. This matter is now ready for final resolution.

## FINDINGS OF FACT

Debtors filed their Chapter 7 petition on July 30, 2003. At that time, they were renting a house at 875 W. 9th Ave., Marion, Iowa under a lease with Equities. On August 18, 2003, Debtors filed an Amendment of Schedule F listing as a creditor Equity Associates Realtors. On August 28, 2003, Debtors filed an additional Amendment of Schedule F listing as a creditor Advanced Equities, Inc., Defendant herein, with a claim of $650.00 described as "fee for unapproved animal on premises." The file contains a Certificate of Service showing that the Notice of Case was served on Defendant by mail on August 28, 2003 addressed to Advanced Equities, Inc., 1855 1st Ave. SE, Cedar Rapids, IA 52402. Debtors received their discharge on November 12, 2003.

Debtors rented the house in Marion from Equities beginning in May 2003. They paid rent of $645 per month and were current in their rent through the month of August 2003. Debtors paid a nonrefundable pet deposit for one dog of $450. In August, 2003 when a housing inspector was checking on Debtors' complaint about their stove, Equities discovered another dog at the house and demanded an additional pet deposit of $650. Mr.

Lankford testified that his wife was house-sitting her mother's dog for a few hours. On August 13, Equities gave Debtors a written 7–day notice to pay the additional pet deposit. Debtors decided to find a different place to live. They found a home in Wayland, Iowa to rent and began moving on or before September 1, 2003, making several trips moving furniture and other belongings. Debtors' current address is 408 E. Front St., Wayland, IA 52654.

On September 2, 2003, Equities left a note at Debtors' house asking Debtors to notify Equities of their vacate date by 5 p.m. on September 4. Equities had received notice from Alliant Energy Co. that utilities were being taken out of Debtors' names on September 3. Equities filed a forcible entry and detainer (f.e.d.) action against Debtors in Linn County Small Claims Court on September 10, 2003. Debtors received notice of this action by certified mail on September 11. The hearing was scheduled for September 17. Both Debtors and Mr. Miell appeared. At the time of the hearing, the small claims court ordered that the matter was stayed based on notice of Debtors' bankruptcy case filed by Debtors' attorney. The f.e.d. action has never been finalized.

Debtor Jon Lankford testified that he went to the house on September 12 to move more belongings. He found Equities' cleaning crew moving Debtors' property from the house to the attached garage without Debtors' permission. One member of the cleaning crew told Mr. Lankford that Equities ordered them to remove the items because the house had been abandoned. The items moved included a personal computer, DVD player, stereo, Play Station II, toys, clothes, end tables, a table and chairs, videos and DVDs. Mr. Lankford testified that these items were thrown in the garage and mixed in with trash. He also testified that he told the cleaning crew

that Debtors had not vacated the house yet and that he had been at the hospital where his wife and newborn son were in intensive care.

Mr. Lankford testified that he went to the house again on September 17, after the f.e.d. hearing, to pick up more belongings, including a washing machine. He found he was locked out and could not get into the house. He went to Equities' office to demand access. Mr. Miell refused to give Debtor the keys to the house and eventually the police came. Mr. Miell wrote down that Debtor was trespassing and should not attempt to enter either the house or Equities' offices. The police told the parties that it was a civil matter.

Robert Miell testified that he is Treasurer for Advanced Equities, Inc., a property management company. Equities managed the house for the owners. Mr. Miell testified that he does not recall getting notice of Debtors' bankruptcy case. Generally, one of three receptionists sorts mail at the business. Equities has one employee who deals with small claims actions full-time. Mr. Miell testified that he was not aware of Debtors' bankruptcy case until Equities received notice of Debtors' discharge.

Mr. Miell testified that Debtors began moving out prior to September 1. After that date, neighbors complained to Equities that Debtors left the doors to the house wide open. Debtors deny they ever left the doors ajar. Mr. Miell stated he was concerned about property safety and health issues, based on landlord-tenant law. On September 11 and 12, Equities placed all Debtors' remaining property in the garage where it was locked up and secured. Mr. Miell testified that Debtors had access to the house and garage after that date and returned to get things out. He believes that if any of Debtors' property is missing, it would be from when the house was left open before Equities put

the items in the garage and locked it up. Mr. Miell disputes that Debtors were ever locked out of the house. He testified that by September 19, Debtors were completely moved out and were not interested in removing any more of their belongings. He stated that Debtors gave Equities permission to take possession of the house.

The parties dispute some of the critical facts. The Court had the opportunity to observe the demeanor of the witnesses and consider their overall credibility. Based upon these considerations, the Court makes the following findings of fact: 1) Equities was properly notified of Debtors' bankruptcy case prior to September 1, 2003; 2) It entered Debtors' house without permission on September 11 and 12 and removed items of Debtors' property to the garage; and 3) Equities locked Debtors out of the house and garage on or before September 17, 2003.

Debtors claim numerous items of their property were missing from the house and garage, including framed pictures, videotapes, small beds, nicknacks, photographs, CDs, DVDs, and other miscellaneous items. They value the missing property at $2,034.77. Debtors also claim that several items of property were damaged, including a computer, stereo, VCR, CD player, Playstation, etc. They value the damaged property at $1,637.81. Debtors researched the retail costs of these items to place a value on them, as shown in lists attached to their complaint. The total amount Debtors claim as damages in this action is $3,975. At the hearing, they also requested damages for mental anguish. The Court notes that, in Schedule B filed in Debtors' bankruptcy case, they value all of their personal household belongings at a total of $369.00.

Equities sent Debtors a "Summary of Move Out Work" dated September 29, 2003. A copy of this document is attached to Debtors' complaint. It seeks a total of $2,287.00 from Debtors including costs for cleaning, painting and other incidentals, $650 for pet rent, $645 for August rent, fees related to the f.e.d. action, etc. Debtors request relief from liability for this amount. They also request that Equities be ordered to pay the costs of this action.

## CONCLUSIONS OF LAW

 The filing of a bankruptcy petition imposes the automatic stay pursuant to § 362. The scope of the automatic stay is extremely broad. *In re Knaus*, 889 F.2d 773, 774 (8th Cir.1989). Included in the automatic stay are:

> (1) the commencement or continuation ... of a judicial ... action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title ...;
>
> ...
>
> (3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate.

11 U.S.C. § 362(a)(1, 3). By the passage of § 362, Congress intended the automatic stay to stop "all collection efforts, all harassment, and all foreclosure actions." H.R. 595, 95th Cong., 1st Sess. § 340–42 (1977), U.S.Code Cong. & Admin.News 1978, 5963, 6296–99. All recognizable interests of the debtors or the estate are afforded the protection of § 362(a). *In re Reinhardt*, 209 B.R. 183, 185 (Bankr. S.D.N.Y.1997). This includes a mere possessory interest in real property without any accompanying legal interest. *Id.* at 186.

 In *In re Sumpter*, 171 B.R. 835, 842 (Bankr.N.D.Ill.1994), the court found that postpetition removal of and damage to personal property incidental to eviction

from a rented residence violated the automatic stay. "Clearly an attempted ouster of a lessee after commencement of the case would be stayed under section 362(a)(3)." *In re Schewe*, 94 B.R. 938, 946 (Bankr.W.D.Mich.1989), quoting 2 *Collier on Bankruptcy* ¶ 362.04, at 362–63 (15th ed.1988). The automatic stay covers eviction actions. *In re Williams*, 144 F.3d 544, 546 (7th Cir.1998); *In re Kilby*, 100 B.R. 579, 580 (Bankr.M.D.Fla.1989) (stating a tenant-debtor is protected from an eviction action even if the action is based solely on post-petition events). The stay continues until the property in question is no longer property of the estate, the case is closed or dismissed, or a discharge is granted or denied. *Williams*, 144 F.3d at 547; 11 U.S.C. § 362(c).

■ Section 362(h) addresses sanctions for the violation of the automatic stay. It provides that:

An individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees,. and, in appropriate circumstances, may recover punitive damages.

11 U.S.C. § 362(h). To recover damages under § 362(h), Debtors must show that they were injured by the violation of the stay and that the violation was willful. *Lovett v. Honeywell, Inc.*, 930 F.2d 625, 628 (8th Cir.1991). A violation of the stay is "willful" where the violator's conduct is deliberate and with knowledge of the bankruptcy filing. *In re Dencklau*, 158 B.R. 796, 800 (Bankr.N.D.Iowa 1993). In imposing actual damages, the trial court has discretion to fashion the punishment to fit the circumstances. *Hubbard v. Fleet Mortgage Co.*, 810 F.2d 778, 782 (8th Cir. 1987). Egregious, intentional misconduct by a creditor violating the automatic stay will support a punitive damages award. *In re Ketelsen*, 880 F.2d 990, 992 (8th Cir.1989). The creditor's status as a sophisticated player in the credit industry can be relevant when considering whether to award punitive damages under § 362(h). *In re Alcock*, No. 02–3640, 2003 WL 22110446, *3 (Bankr.N.D.Iowa Sept. 11, 2003).

## ANALYSIS

■ The automatic stay in this case arose on the petition date, July 30, 2003. After that date, Equities violated the stay by filing the forcible entry and detainer action on September 10, moving Debtors' belongings out of the rental house on September 11 and 12, and locking Debtors out of the house on September 17, 2003. Equities had proper notice of Debtors' bankruptcy filing and failed to request relief from the automatic stay prior to proceeding against Debtors and taking possession of the rental house. Equities' actions were willful and with knowledge of the bankruptcy case.

■ Debtors are entitled to damages for Equities' violation of the automatic stay. They were injured by the loss of or damage to personal property arising from Equities' actions in removing their property from the house and locking Debtors out of the premises. Debtors' valuation of their missing and/or damaged property at close to $4,000 is based on retail prices for the various items. In contrast, they value all their household belongings in their bankruptcy schedules at less than $400. Market value is a more appropriate measure of actual damages in this matter, rather than retail value. As such, Debtors are entitled to actual damages of $750 caused by Equities' violation of the automatic stay.

■ Equities seeks damages of $2,287. Of this, the pet rent of $650 was specifically discharged. The testimony establishes that the claim of $645 for August rent was

in fact paid. The remainder of the damages relates to clean up as well as the costs for the forcible entry and detainer. All of these actions occurred while the automatic stay was in place. Equities' actions, in violation of the automatic stay, are void. As such, any claim Equities asserts against Debtors is void and not collectible against Debtors. The Court finds that Debtors are not liable for any of the amounts claimed against them by Equities relating to their vacation of the rental house and Equities' eviction proceedings. This includes the entire amount of $2,287.00 Equities billed Debtors in the "Summary of Move Out Work" dated September 29, 2003.

Punitive damages may be awarded under certain circumstances when the Court finds the conduct to be particularly egregious. Here, Equities received notice of the bankruptcy. It, however, ignored the automatic stay and attempted to evict Debtors, not only in violation of the automatic stay, but without a forcible entry and detainer order. After the State Court stayed all action, Equities not only continued to ignore the automatic stay but continued to evict Debtors in violation of the State Court Order. After the f.e.d. hearing, Equities changed the locks and effectively barred Debtors from the property. This conduct satisfies the standard authorizing punitive damages. Punitive damages must have a rational relationship to actual damages. This Court concludes punitive damages of $1,000 to be appropriate.

**WHEREFORE,** Debtors' Complaint is GRANTED.

**FURTHER,** Debtors Jon and Sha Lankford are entitled to actual damages from Advanced Equities, Inc. in the amount of $750.

**FURTHER,** punitive damages in the amount of $1,000 shall be entered in favor of Debtors and against Advanced Equities, Inc.

**FURTHER,** Advanced Equities, Inc.'s claim against Debtors of $2,287 is void and not collectible against Debtors.

**FURTHER,** judgment shall enter accordingly. Any court costs associated with this action are assessed against Advanced Equities, Inc.