**In re Iris DOMINGUEZ, Debtor.**

No. 03–38012.

United States Bankruptcy Court,
S.D. New York,
Poughkeepsie Division.

Aug. 10, 2004.

Stephanie McAleer, Newburgh, NY, for Debtor.

Geoffrey E. Chain, Newburgh, NY, Corporation Counsel, City of Newburgh.

Jeffrey S. Batiste, Local Counsel for Cohn & Roth, Poughkeepsie, NY, for Green Tree Credit Corp.

## *MEMORANDUM DECISION HOLDING CITY OF NEWBURGH IN VIOLATION OF 11 U.S.C. § 362(a)(1) AND AWARDING ATTORNEY'S FEES AND EXPENSES*

CECELIA G. MORRIS, Bankruptcy Judge.

Debtor's counsel brought a "Motion to Compel Enforcement of the Provisions of the Section 362 Automatic Stay", (the "Motion"), ECF Docket No. 7, returnable on August 3, 2004, seeking an Order preventing the City of Newburgh from enforcing a Default Judgment of Foreclosure (the "Foreclosure Judgment") obtained post-petition. No motion seeking stay relief was brought by the City of Newburgh (the "City") prior to seeking issuance of the Foreclosure Judgment. The City of Newburgh, through its corporation counsel, filed Opposition to the Debtor's Motion, ECF Docket Nos. 12 and 14, arguing that because Debtor filed her bankruptcy petition after the expiration of her time to redeem her property pursuant to New York state law, the property was not property of the bankruptcy estate and thus, the automatic stay did not apply. Green Tree Credit, LLC, ("Green Tree") a secured creditor with an interest in the property at issue in this controversy, filed an "Affirmation in Support of Debtors (sic) to Enforce the Provisions of Section 362 Automatic Stay," ECF Docket No. 16, arguing that Green Tree has a duly recorded mortgage lien on the subject property. Green Tree asserts that it was never properly served with a notice of the foreclosure action. Additionally, Green Tree states that Conseco Finance Credit Corp., Green Tree's successor-in-interest, is a Chapter 11 Debtor before the Northern District of Illinois, Bankruptcy Petition number 02–49675. The City never sought stay relief in Conseco's bankruptcy prior to proceeding with its foreclosure of property as to which Conseco f/k/a Green Tree has an interest. For the reasons set forth below, the Court holds that the City of Newburgh violated 11 U.S.C. § 362(a)(1) by affirmatively obtaining a Foreclosure Judgment post-petition without seeking stay relief from the bankruptcy court.

### *JURISDICTION*

The Court has jurisdiction under 28 U.S.C. Sections 1334(a) and 157(a) and the standing order of reference to bankruptcy judges dated July 10, 1984 signed by acting Chief Judge Robert J. Ward. This is a core proceeding under 28 U.S.C. Section 157(b)(2). The following opinion constitutes the Court's findings of fact and conclusions of law under Bankruptcy Rules 9014 and 7052.

### *BACKGROUND FACTS*

Debtor, a single mother of three children who works as a light machine opera-

tor, owns a single-family residence located at 31 Forsythe Place, Newburgh, New York (the "Property"). Debtor filed a voluntary petition pursuant to Chapter 13 of Title 11 of the United States Code on December 19, 2004. In Debtor's Schedule A to her bankruptcy petition, the Property is assigned a value of $144,000.00. Schedule A also reveals secured claims against the property in the aggregate amount of $64,544.65, held by Citi Financial and Green Tree. On Debtor's Schedule E, she listed the City of Newburgh as a priority creditor. Debtor's Schedule E indicates that she was delinquent in paying her 2001, 2002 and 2003 taxes, for a total tax debt of $8,364.48.[1] The City of Newburgh did not file a claim in Debtor's bankruptcy case. On July 29, 2004, Debtor confirmed a thirty-six month Chapter 13 plan. The confirmed plan provides for a $600 per month plan payment and will result in a one hundred percent distribution to Debtor's creditors.[2]

On August 14, 2003, the City of Newburgh filed a Petition and Notice of Foreclosure in Orange County Supreme Court (the "Foreclosure Petition") with respect to, *inter alia*, Debtor's property. The Foreclosure Petition indicates that December 1, 2003 was the last date for redemption. *See* the City's Affirmation in Support of Opposition, Exhibit B. After the Debtor filed her bankruptcy petition the City of Newburgh proceeded with its foreclosure action in state court against Debtor's property, without seeking stay relief from this Court or giving notice to the Debtor and security holders. Specifically, the City submitted an Affirmation, dated May 12, 2004, in support of the entry of a default judgment against the Property[3] to Orange County Supreme Court, detailing the City's compliance with New York State Real Property Tax Law. *See* Exhibit E to the Opposition. On May 25, 2004, in reliance on the May 12, 2004 Affirmation submitted by the City and upon the City's motion, Justice Lawrence Ivan Horowitz of the Orange County Supreme Court signed, and the Orange County Clerk entered, a Judgment awarding the City of Newburgh possession of the Property. *See* Exhibit F to the Opposition.

On June 15, 2004 a representative of the City of Newburgh arrived at Debtor's home to serve a Notice, annexed to Debtor's Motion as Exhibit C, declaring the City the owner of the Property, informing Debtor that the City reserved the right to access the property and, upon notice to the occupants, to perform repairs and show the property to potential buyers. Shortly thereafter, the Debtor made the instant Motion, in which she indicated that she had been unaware of the City's continuation of its efforts to foreclose on her home, in spite of her bankruptcy filing; that she continued to receive tax and water bills[4] from the City; and had continued to make mortgage payments to secured lien holders. Debtor further stated that the City had made no effort to address the liens on her Property that are held by the first and

---

1. Thus, although Debtor has almost $80,000 in equity in the premises, the City is attempting to foreclose on her property for less than $10,000 in back due taxes.

2. As the City did not file a proof of claim the taxes are not to be paid through Debtor's plan.

3. Debtor's property is known as In Rem No. 277 in the State Court proceeding. Although the Affirmation excepts certain property as being "subject of a stay under the Bankruptcy Laws," Debtor's property was not among those excluded from the May 25, 2004 judgment.

4. Debtor did not testify as to whether or not these tax and water bills had or had not been paid.

second mortgage holders. Debtor's counsel advanced that she contacted the corporation counsel, who insisted that the Debtor's home was now in the City's ownership. The Debtor's stated purpose in filing this bankruptcy case was to save her home. She therefore filed the Motion seeking enforcement of the automatic stay. In her Motion, Debtor sought an Order (1) voiding the foreclosure action, (2) requiring the City to deed the property back to her, (3) enforcing the provisions of 11 U.S.C. § 362(a) and (4) awarding her counsel fees of $2,500.00 and expenses of $150.00.

The City of Newburgh filed opposition to the Debtor's Motion. The City's position was that the Debtor's right to redeem the property expired on December 1, 2003, pursuant to New York Real Property Tax Law Section 1131 ("N.Y.R.P.T.L."). N.Y.R.P.T.L. § 1131 states in pertinent part that a failure to redeem or answer by any person having the right to do so forever bars and forecloses that person of all right, title and interest and equity of redemption in and to the parcel in which the person has an interest. As the redemption period purportedly expired pre-petition, it is the City's position that the property was not protected by the automatic stay and thus, they were not required to seek stay relief before proceeding with their tax foreclosure action in state court.[5]

The Court heard oral argument on August 3, 2004. At the hearing, corporation counsel for the City of Newburgh argued that the procurement of the post-petition judgment was merely a "ministerial" act that did not implicate the automatic stay. Debtor took the stand and gave testimony that she attempted to pay her taxes on the last day to redeem, December 1, 2003, but that her tender of payment, in the form of $7,500 in cash and a personal check for the remaining $864.48, was refused, because ostensibly a personal check was not acceptable. Debtor testified that she presented a personal check because although the funds were available in her account, due to bank bureaucracy, the funds could not be released in the form of a bank check. She was told by the City to "come back tomorrow." Of course, "tomorrow" was too late, the redemption period had lapsed and the Debtor filed the instant case on December 19, 2003 in an attempt to save her home.

### DISCUSSION

*Ministerial Acts Distinguished from Judicial Functions*

▬ The City's contention that their procurement of a state court default judgment post-petition constitutes a "mere ministerial act" that does not implicate the automatic stay is clearly wrong. *See Rexnord Holdings, Inc. v. Bidermann*, 21 F.3d 522 (2d Cir.1994). "A ministerial act is one that is essentially clerical in nature." *See In re Best Payphones*, 279 B.R. 92, 98 (Bankr.S.D.N.Y.2002). The City's actions in, *inter alia*, (1) filing an Affirmation with the Orange County Supreme Court on May 12, 2004, six months after Debtor filed a petition for bankruptcy, and upon which the state court relied in rendering its Judgment; and (2) personally presenting an agent at Debtor's residence on June 15, 2004 to serve her with a Notice that

---

**5.** Green Tree's argument that they did not receive notice of the foreclosure action because the City sent documents to an old address, and any potential stay violation in the Illinois bankruptcy proceeding, is not considered herein, as the issues raised by Green Tree are not necessary to the Court's holding.

The Court is gravely concerned, however, with regard to the allegations that the City has not complied with notice procedures and did not seek stay relief in yet another bankruptcy proceeding tangentially connected to this case.

ownership of her property had been transferred to the City,[6] were both substantive acts and "the ... continuation ... of a judicial, administrative, or other action or proceeding against the debtor ..." stayed upon the filing of Debtor's Chapter 13 petition. *See* 11 U.S.C. § 362(a)(1).[7]

For the proposition that its actions were merely ministerial in nature, the City relies on *In re Rodgers*, 333 F.3d 64 (2d Cir.2003). In *Rodgers*, the property at issue was sold to a third party *prior* to the bankruptcy filing, thereby extinguishing the debtor's right to redemption. *See* 11 U.S.C. § 1322(c)(1). The only remaining action to be taken post-petition in *Rodgers* to transfer the property to the purchaser's ownership was recording of a deed, which debtor maintained was prevented by the automatic stay. The Second Circuit determined that "once the ability to redeem has been lost post-petition, the foreclosed property sold at a public sale is no longer property of the estate for purposes of Section 541." *Id.* at 68. The Second Circuit noted that "the critical inquiry is whether [debtor] had, under state law, any legal or equitable ownership interests that survived the auction." Because transfer of the deed in *Rodgers* was a mere ministerial act, the automatic stay was not implicated by the *transfer* alone. In *Rodgers*, all judicial functions necessary to transfer the property were completed pre-petition—a judgment of foreclosure had been entered and a foreclosure sale conducted. In the in-

stant case, no foreclosure judgment was entered pre-petition. No pre-petition foreclosure sale was conducted. All that occurred here was that the Debtor tendered payment on the redemption date, which tender was rejected by the City due to the form of the funds. When Debtor returned the following day as directed by the City's agent she was denied the right to redeem her home. The *Rodgers* case is distinguishable factually from the case *sub judice* as the City continued a judicial action, complete with submission of Affirmations and Motions to the State Court, against the Debtor that did in fact implicate the automatic stay.

■■ The *Rodgers* case does define a critical inquiry as to whether Debtor had any equitable or legal interest that survived the expiration of the redemption period. "Property interests are created and defined by state law." *In re Rodgers, supra,* at 66. N.Y.R.P.T.L. § 1131 states that the expiration of the redemption period "forever ... bar[s] and foreclose[s] [ ] all right, title, and interest and equity of redemption in and to the parcel in which the person has an interest ..." Thus, the City advances that a debtor's failure to redeem property before the expiration date permanently extinguished her interest in the property under New York State law. Filing for bankruptcy would not revive a debtor's rights in her home if in fact the redemption period had lapsed.[8] *See In*

6. The Court does not find that these two acts were the *only* actions taken by the City that were violation of the automatic stay. Rather, these are merely two examples of the City's actions that in the Court's opinion are particularly egregious violations of the stay.

7. Even if the City had merely allowed the state proceeding to go forward, as corporation counsel suggested was the circumstance during oral argument, the City had the affirmative obligation to seek to void entry of any judgment issued in violation of the automatic

stay. *See In re Braught*, 307 B.R. 399, 403 (Bankr.S.D.N.Y.2004) and cases cited therein. The City failed to seek a vacatur of the judgment, and indeed, took measures to enforce the judgment by serving a Notice on Debtor that the property had been transferred to their possession.

8. The Court makes no determination as to whether Debtor's redemptions rights expired pre-petition.

*re Haynes*, 283 B.R. 147, 155 (Bankr. S.D.N.Y.2002) (Debtor's failure to exercise her right to redemption within the mandatory period prescribed under state law and prior to the filing of the bankruptcy case precludes the revival of Debtor's ownership rights in the property and therefore cause existed to lift the automatic stay.) As discussed below, however, the fact that Debtor might not have been able to revive her rights in the property by filing a bankruptcy petition did not relieve the City of its obligation under the Bankruptcy Code to seek stay relief before continuing its tax foreclosure proceeding in state court.

*Cause for Stay Relief Distinguished from The Inapplicability of the Provisions of 11 U.S.C. § 362(a)*

■ A Motion for Stay Relief is not a mere formality that may be ignored in a party's discretion. Only a bankruptcy court has jurisdiction to terminate, annul, or modify the automatic stay. "Central to the bankruptcy case as to which exclusive Article I federal jurisdiction lies is the automatic stay imposed by 11 U.S.C. § 362(a). Congress has declared that actions to 'terminate, annul, or modify' the automatic stay are core bankruptcy proceedings. 28 U.S.C. § 157(b)(2)(G) … Consequently, it is undisputed that *only* a

bankruptcy court has jurisdiction to terminate, annul or modify the automatic stay." *See In re Siskin*, 258 B.R. 554, 561–562 (Bankr.E.D.N.Y.2001) (citations omitted); *accord, Carr v. McGriff*, 8 A.D.3d 420, 2004 WL 1341842 (App. Div.2d Dep't. 2004)(holding that orders issued by the New York Supreme Court post-petition, including a default judgment of foreclosure and sale, were in violation of the automatic stay and therefore void). The *Carr* case also recognized that the automatic stay is not limited to litigants but also applies to state and federal courts. *Carr*, 8 A.D.3d at 422, 2004 WL 1341842, at *1.

■ The Court assumes, without deciding, for the sole purpose of this opinion, and giving the City every possible favorable factual assumption, that the Debtor's right to redemption expired on December 1, 2003.[9] Even if the City is correct in their assumption that Debtor's right to redeem the property had expired and her bankruptcy filing did not restore those rights, the City nonetheless skipped a significant step by proceeding, postpetition, to obtain a judgment of foreclosure and sale, and then by taking action to enforce that judgment, without proving to this Court that it was entitled to stay relief. Although the City maintains that it did not need to seek stay relief because the Debt-

---

**9.** The Court heard testimony from the Debtor that she tendered payment of the taxes on the redemption date and that the City refused payment. Debtor was told to "come back tomorrow." Query: does the State of New York not have an "excusable neglect" standard for taxpayers? In this regard, it is also not clear to the Court that the Debtor's right to redemption had expired pre-petition, as N.Y.R.P.T.L. § 1131 allows a tax payer a one month period in which to vacate a default judgment after entry. Ostensibly a tax payer can pay delinquent taxes at that time, *see In re Foreclosure of Tax Liens by Clinton County*, 299 A.D.2d 774, 751 N.Y.S.2d 81 (App.Div.3d Dep't. 2002). At the time of filing, no default judgment had been taken against Debtor. As

the May 25, 2004 judgment is void, the Debtor may be in compliance with § 1131 and have a one-month period, which would have been tolled in any event upon filing for bankruptcy by 11 U.S.C. § 108, after the entry of a subsequent default judgment to seek vacatur and redeem her taxes. It is troubling to this Court that the City did provide Debtor with notice of the continuance of its tax foreclosure proceeding, the entry of the Foreclosure Judgment or the one month period she afforded her after entry of the default judgment in which to vacate it. The Court notes that no affidavit of service of the Affirmation in Support of Entry of the Default Judgment or the Default Judgment itself is included in the City's exhibits to its Opposition.

or's right to redemption had expired, the City had an obligation to prove to this Court that indeed, the Debtor's right had expired, prior to proceeding in the state court, and in any event, to show that cause existed to lift the stay to divest her of her possessory interest. The germane Second Circuit case law shows that the stay was triggered by Debtor's filing because although there is a dispute as to whether Debtor has a legal interest in the Property, there is no question that Debtor has been in possession of the Property at all times relevant to this controversy. It is well settled that a debtor's mere possessory interest in premises, even absent any legal interest, is protected by the automatic stay. *See In re 48th Street Steakhouse,* 835 F.2d 427, 430 (2d Cir.1987)(A mere possessory interest in real property, without any accompanying legal interest, is sufficient to trigger the protection of the automatic stay) *In re Haynes,* 283 B.R. 147 (Bankr.S.D.N.Y.2002); *In re Éclair Bakery Ltd.,* 255 B.R. 121 (Bankr.S.D.N.Y. 2000). In fact, case law in all ten circuits that have ruled on this issue hold that a possessory interest in property is protected by the automatic stay. *See I.C.C. v. Holmes Transportation, Inc.,* 931 F.2d 984 (1st Cir.1991); *In re Atlantic Business and Community Corp.,* 901 F.2d 325 (3rd Cir.1990); *In re Connecticut Pizza, Inc.,* 193 B.R. 217 (Bankr.D.Md.1996); *Boydstun v. Reed,* 218 B.R. 840 (N.D.Miss.1998); *In re Convenient Food Mart No. 144, Inc.,* 968 F.2d 592 (6th Cir.1992); *In re Wright,* 183 B.R. 541 (Bankr.C.D.Ill.1995); *In re Lankford,* 305 B.R. 297 (Bankr.N.D.Iowa 2004); *In re Larry's Apartment, L.L.C.,* 249 F.3d 832 (9th Cir.2001); *In re Gagliardi,* 290 B.R. 808 (Bankr.D.Colo.2003); *In re Addon Corp.,* 231 B.R. 385 (Bankr. N.D.Ga.1999). The City has obviously confused their purported right to relief from the stay with whether the stay was ever triggered at all as to the Debtor's property. As Judge Gerber pointed out in the *Éclair Bakery* case, "... while these remaining [possessory] rights on the part of the debtor ... trigger the applicability of the automatic stay in the first instance, they are not determinative of the *fundamentally different question* as to whether the stay, once triggered, should be modified or terminated for cause ..." *See Éclair Bakery,* at 134 (emphasis supplied).

 The burden was on the City to seek stay relief. The Court notes that "[i]t is not the debtor's responsibility to take action that ensures that she receive the protection of the automatic stay; rather the creditor bears the burden of seeking relief from the automatic stay before taking post petition collection actions." *In re Braught, supra,* at 401 (Bankr.S.D.N.Y. 2004). Nevertheless, in this case the Debtor was put to the trouble and expense of filing a motion to preserve her rights under the Bankruptcy Code. The City now advances in opposition to that motion facts and law that were more properly brought before this Court on the City's own motion for stay relief prior to obtaining a state court judgment. The City may or may not have been entitled to stay relief had it bothered to make a motion before this Court. Debtor has now spent nine months in bankruptcy, and gone through the laborious Chapter 13 confirmation process. Debtor has remained current with her plan to pay all other creditors. The City has also expended time and resources for a judgment that is void. A timely lift stay motion would have afforded this Court the opportunity to rule and would have shown Debtor what actions were necessary, or not, as the case may be, to preserve her home.[10] The Court desires to make it

---

**10.** Again, the Court does not make any deter-

mination as to the expiration of the redemp-

clear to the City that it is required to move for stay relief if it wishes to enforce its rights against a Debtor protected by the United States Code and the federal bankruptcy laws, and it cannot bypass this Court's jurisdiction merely because in their opinion cause exists to lift the stay.

In the case cited by the City in support of its own argument that the stay was not implicated, *In re Haynes, supra,* the Bankruptcy Court found the municipality in violation of the stay for transferring Debtor's property without stay relief. *See Haynes, supra,* at 151. In ruling on a subsequent Motion seeking *nunc pro tunc* stay relief, Judge Blackshear held in *Haynes* that "... cause exists to grant relief from the automatic stay as the Debtor has no interest that warrants **continued stay protection** ..." *Id.* at 156 (emphasis supplied). The *Haynes* decision stands for the proposition that a lapse of a right to redemption pre-petition gives a moving party *cause* for stay . relief. The Court does not read *Haynes* to mean that the automatic stay *never applied* to debtor's possessory interest in the property, particularly since the *Haynes* court determined that the creditor was in violation of the stay for making just that assumption. Indeed, had the City more carefully read the authorities it cites to this Court in its memorandum of law, it would have realized that in each case upon which it relies, a motion for stay relief was brought in the bankruptcy court prior to any affirmative creditor action being taken.[11] *In re Canney, III,* 284 F.3d 362, 367 (2d Cir.2002)("On June 23, 1999, Merchants Bank moved for relief from the automatic stay"); *In re GSVC Restaurant Corp.,* 3 B.R. 491, 492 (Bankr.S.D.N.Y.1980)(Adversary proceeding commenced for relief from the automatic stay); *In re Liggett,* 118 B.R. 213, 214 (Bankr.S.D.N.Y.1990)("By order to show cause dated February 26, 1990, EOR moved in this court for relief from the automatic stay ...."). Thus, regardless of whether the Debtor's right to redeem the property had expired, the Debtor's possessory interest in the property was protected by the automatic stay and the City was required to request relief from the automatic stay prior to seeking and obtaining a judgment of foreclosure in state court based upon the delinquent tax debt.

In this Court's decision in *In re Braught, supra,* the County of Sullivan, New York was held in violation of the automatic stay by attaining a judicial signature on their tax foreclosure judgment post-petition; additionally, the municipality's failure to vacate the judgment constituted a violation of the automatic stay. In this case, the petition was filed on December 19, 2003 and the Foreclosure Judgment was signed on May 25, 2004. No Motion seeking relief from the automatic stay was ever filed. By securing a judgment against the Debtor post petition the City violated the automatic stay.

---

**11.** The exception is the case *In re Rodgers, supra.* In that case, the only act taken after the bankruptcy petition was filed, delivery of the deed, was ministerial in nature and thus, was not subject to the automatic stay. *Rodgers,* at 69. As discussed *supra,* the complained of activity is far from ministerial in nature. This Court has held that the procurement of a judge's signature on a tax foreclosure judgment post petition is a judicial function subject to the automatic stay. *See*

*Braught, supra,* at 404. *See also Rexnord Holdings, supra,* at 527 (issuance of a judicial decision is clearly prohibited by the automatic stay). Thus, the City's procurement of a judgment post petition was not a mere ministerial act, but rather a "commencement or continuation ... of a judicial action against the debtor that was ... commenced before the commencement of [this] case ..." 11 U.S.C. § 362(a).

*Standard for Willful Violation of the Automatic Stay*

In the Second Circuit, "if a party charged with violating the stay knows that the stay is in effect, any deliberate act taken in violation of the stay justifies an award of damages." *Ford Motor Credit Co. v. Florio (In re Florio)*, 229 B.R. 606, 608 (S.D.N.Y.1999) (Parker, J.). Damages for willful violation of the automatic stay will lie if "a person takes a deliberate act . . . in violation of a stay, which the violator knows to be in existence . . . [s]uch an act need not be performed with specific intent to violate the stay. Rather, so long as the violator possessed general intent in taking actions which have the effect of violating the automatic stay the intent required by § 362(h) is satisfied." *See Sucre v. MIC Leasing Corp. (In re Sucre)*, 226 B.R. 340, 349 (Bankr. S.D.N.Y.1998) (Gonzalez, J.). Debtor listed the City of Newburgh on her petition and thus, the City received a court generated notice of Debtor's filing. The City of Newburgh does not allege that they did not receive notice of Debtor's bankruptcy filing. Judicial actions taken against a debtor are void *ab initio*, absent relief from the automatic stay. *See Carr v. McGriff*, 8 A.D.3d at 422, 2004 WL 1341842, at *2; *In re Braught, supra*, at 403–404, *Best Payphones, supra*, at 98–99, *In re Patti*, 2001 WL 1188218 at *7 (Bankr.E.D.Pa.2001). Thus the May 25, 2004 Foreclosure Judgment entered against the Debtor was a nullity. As the current judgment is void, another will need to be sought if and when the City proves it is entitled to stay relief from this Court. Thus the City is instructed to retransfer the property to Debtor's ownership.

Debtor's counsel has asked for $2,500 in legal fees and $150 in expenses for making the motion to enforce the stay. See 11 U.S.C. § 362(h).[12] The party seeking damages pursuant to 11 U.S.C. § 362(h) has the burden of proving what damages were incurred and what relief is appropriate. *See Sucre*, supra, at 349. At the hearing, the Court elicited testimony from the Debtor's counsel that her hourly rate is $100.00, and that she spent a total of 15 hours on this matter, inclusive of court time. Debtor's counsel also incurred $150 in expenses. Debtor is also entitled to $16.50 in travel expenses. The Court orders the City of Newburgh to pay to Debtor's counsel the sum of $1,650.00 for actual damages suffered and attorney's fees incurred in the bringing of this motion.

### CONCLUSION

Debtor's counsel is directed to submit an Order consistent with this opinion.

---

**12.** 11 U.S.C. § 362(h) An individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages.